**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

|  |  |  |
|---|---|---|
| DENNIS VAN VEEN, | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | Case No. 2:10-cv-01635 |
| EQUIFAX INFORMATION | : | |
| SERVICES, LLC, et al., | : | |
| | : | |
| Defendants. | : | |
| | : | |
| | : | |

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT AT&T CORP.'S MOTION FOR SUMMARY JUDGMENT

## TABLE OF CONTENTS

**Page**

I.      INTRODUCTION ...................................................................................1
II.     RELEVANT PROCEDURAL HISTORY .........................................................2
III.    STATEMENT OF UNDISPUTED MATERIAL FACTS ...............................3
        A.      The Parties ...........................................................................3
        B.      AT&T's Credit Reporting Procedures.......................................5
        C.      Plaintiff's Account With AT&T................................................9
        D.      Plaintiff's Navy Federal Credit Union Loan............................17
        E.      Plaintiff's Dispute With Respect To AT&T's Credit Reporting ............18
                1.      The Experian ACDV ..............................................18
                2.      The Trans Union ACDV...........................................20
                3.      The Equifax ACDV .................................................22
IV.     ARGUMENT.....................................................................................24
        A.      Standard of Review.................................................................24
        B.      Plaintiff's Allegations...........................................................25
        C.      AT&T Is Entitled To Judgment on Plaintiff's FCRA Claim.................26
                1.      Plaintiff Cannot Prove A Violation Of The FCRA .....................26
                        (a)     Summary Judgment Should be Granted in Favor of AT&T
                                Because AT&T's Credit Reporting was Accurate.........................27
                        (b)     AT&T Cannot Be Held Liable For Failing to Report
                                Plaintiff's Account as "Disputed." .................................31
                        (c)     Alternatively, Even if AT&T's Reporting was Inaccurate,
                                Summary Judgment Should be Granted in Favor of AT&T
                                as it Conducted a Reasonable Investigation When Informed
                                of Plaintiff's Dispute...................................................35
                                i.      AT&T Reasonably Investigated the Dispute
                                        Transmitted by Experian...................................40
                                ii.     AT&T Reasonably Investigated the Dispute
                                        Transmitted by Trans Union .............................42
                                iii.    AT&T Reasonably Investigated the Dispute
                                        Transmitted by Equifax .....................................44
                2.      Alternatively, Summary Judgment Should Be Granted Because
                        Plaintiff Cannot Prove He Was Damaged. .................................47
                        (a)     Plaintiff Has Not Suffered Any Damages That Warrant
                                Compensation By AT&T.................................................47
                        (b)     Plaintiff Has Not And Cannot Demonstrate Any
                                Entitlement To Punitive Damages. ..................................49
                        (c)     Plaintiff Has Not And Cannot Demonstrate Any
                                Entitlement To Damages For Embarrassment And
                                Humiliation. ......................................................50
V.      ALTERNATIVELY, PLAINTIFF'S CLAIMS SHOULD BE REFERRED TO
        THE FEDERAL COMMUNICATIONS COMMISSION ON PRIMARY
        JURISDICTION GROUNDS......................................................................51
VI.     CONCLUSION.....................................................................................54

## TABLE OF AUTHORITIES

**Page**

### FEDERAL CASES

*Akalwadi v. Risk Mgmt. Alternatives, Inc.,* 336 F. Supp.2d 492 (D. Md. 2004) ...................37

*Alves v. Verizon, et al.,* No. 08-3196, 2010 WL 2989988 (D.N.J. July 27, 2010) ...............48

*Anthony v. Duff & Phelps Corp.,* No. 09-3918,
    2010 WL 3222188 (E.D.Pa. Aug. 12, 2010) ............................................................24

*AT&T v. Community Health Group,* 931 F. Supp. 719 (S.D. Cal. 1995) ...............................26

*AT&T v. Dataway, Inc.*, 577 F. Supp. 2d 1099 (N.D.Cal. 2008)...........................................26

*Bartley v. LVNV Funding, LLC*, No. 09-3884,
    2010 WL 2629072 (D.N.J. June 28, 2010)..............................................................27

*Beisel v. ABN Ambro Mortg., Inc.*, No. 07-2219, 2007 WL 2332494
    (E.D. Pa. Aug. 10, 2007) ..........................................................................................36

*In re Benson*, 445 B.R. 445 (Bankr. E.D.Pa. 2010)...............................................................33

*Bruce v. First Trust U.S.A. Bank, N.A.*, 103 F. Supp. 2d 1135 (E.D. Miss. 2002)................37

*Burrell v. DSF Services, LLC, et al.,* 735 F. Supp. 2d 438 (D.N.J. 2010).............................27

*Carney v. Experian Info Solutions, Inc.*, 57 F.Supp.2d 496 (W.D.Tenn. 1999)....................27

*Chiang v. Verizon New England, Inc.*, 595 F.3d 26 (1st Cir. 2010)......................................28

*Cope v. MBNA America Bank, N.A.*, No. 04-cv-493, 2006 WL 655742 (D. Or. 2006) ........37

*Cousin v. Trans Union Corp.*, 246 F.3d 359 (5th Cir. 2001)..................................................51

*Crabill v. Trans Union, L.L.C.,* 259 F.3d 662 (7th Cir. 2001) ...............................................37

*DeAndrade v. Trans Union*, 523 F.3d 61 (1st Cir. 2008) .......................................................29

*Demmick, et al. v. Cellco Partnership, et al.*, No. 06-2163,
    2011 WL 1253733 (D.N.J. 2011) .............................................................................52

*Dimedio v. HSBC Bank*, No. 08-5521, 2009 WL 1976072 (D.N.J. 2009) ............................27

*Evantash v. G.E. Capital Mortgage Servs., Inc., et al.*,
    No. 02-cv-1188, 2003 WL 22844198 (E.D.Pa. 2003)..............................................28

*Farmer v. Brennan*, 511 U.S. 825 (1994).............................................................................50

ii

*Federal Communications Commission v. Van Veen*, 1:11-mc-00361-ABJ (D.D.C.) ...........3

*Farren v. RJM Acquisition Funding LLC*, No. 04-995, 2005 WL 1799413
    (E.D. Pa. July 26, 2005).......................................................................................36

*Gagliardi v. Equifax Information Services*, No. 09-1612, 2011 WL 337331
    (W.D.Pa. Feb. 3, 2011) .....................................................................................47

*Global Naps, Inc. v. Bell Atlantic-New Jersey, Inc.*,
    287 F.Supp. 2d 532 (D.N.J. 2003).............................................................................53

*Gorman v. Wolopff & Abramson, LLP, et al.*, 584 F.3d 1147 (9th Cir. 2009) ......................34

*Jaramillo v. Experian Information Solutions, Inc.*, 155 F.Supp.2d 356 (E.D. Pa. 2001)......36

*Johnson v. MBNA America Bank*, 357 F.3d 426 (4th Cir. 2004) ...........................................37

*Kaetz v. Chase Manhattan Bank, USA*, No. 05-1546,
    2006 WL 1343700 (M.D. Pa. May 17, 2006)...........................................................36

*Krajewski v. American Honda Finance Corp.*, 557 F.Supp.2d 596 (E.D. Pa. 2008) ............31

*Koropoulos v. Credit Bureau, Inc.*, 734 F.2d 37 (D.D.C. 1984) ...........................................28

*In re Long Distance Telecommunications Litigation*, 831 F.2d 627 (6th Cir. 1987) ............53

*Malm v. Household Bank (SB), N.A.*, No. Civ. 03-4340,
    2004 WL 1559370 (D. Minn. 2004).........................................................................38

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574 (1986) ............................25

*Millet v. Ford Motor Credit Co.*, No. 04-2450,
    2006 WL 1301160 (D.Kan. May 9, 2006) ...............................................................36

*Murray v. GMAC Mortgage Corp.*, No. 05-1229,
    2007 WL 2317194 (N.D. Ill. July 23, 2007) ............................................................50

*Myers v. Bennett Law Offices*, 238 F. Supp. 2d 1196 (D. Nev. 2002) ..................................51

*Nagle v. Direct Merchants Credit Card Bank, N.A.*, No. 05-3739,
    2006 U.S. Dist. LEXIS 29835 (E.D. Pa. Mar. 23, 2006)...........................................28

*Nelson v. Chase Manhattan Mortgage Corp.*, 282 F.3d 1057 (9th Cir. 2002).....................27

*Philbin v. Trans Union Corp.*, 101 F.3d 957 (3rd Cir. 1996)................................................48

*Richman Bros. Records, Inc. v. U.S. Sprint Comms. Co.*,
    953 F.2d 1431 (3rd Cir. 1991)................................................................................52

*Robinson v. Equifax Information Systems*, No. 04-cv-0229,
2005 WL 1712479 (S.D.Ala. 2005)..........................................................................38

*Safeco Ins. Co. of America, et al. v. Burr*, 551 U.S. 47 (2007) ..............................................49

*Sarko v. Penn-Del Directory Co.*, 968 F. Supp. 1026 (E.D. Pa. 1997) .................................25

*Sarver v. Experian Information Solutions*, 390 F.3d 969 (7th Cir. 2004) ..............................50

*Saunders v. Banking and Trust Co. of Virginia*, 526 F.3d 142 (4th Cir. 2008).....................32

*Scheel-Baggs v. Bank of America*, 575 F. Supp. 2d 1031 (W.D. Wis. 2008).........................33

*Schmidt v. Trans Union, LLC, et al.*, No. 03-C-1643,
2004 WL 785098 (N.D.Ill. 2004) .............................................................................38

*Schoonejongen v. Curtiss-Wright Corp.*, 143 F.3d 120 (3d Cir. 1998).................................25

*Shannon v. Equifax*, 764 F. Supp. 2d 714, 721 (E.D.Pa. Jan 26, 2011) ................................28

*Solt v. Alpo Petfoods, Inc.*, 837 F. Supp. 681 (E.D. Pa. 1993) ..............................................25

*Telstar Resource Group, Inc. C. MCI, Inc.*, 476 F. Supp. 2d 261 (S.D.N.Y. 2007) .............53

*Todd v. Associated Credit Bureau Servs., Inc.*, 451 F.Supp. 447 (E.D.Pa. 1977)................28

*Walden v. Saint Gobain Corp.*, 323 F. Supp. 2d 637 (E.D.Pa.2004) ....................................24

*Wantz v. Experian Information Solutions*, 386 F.3d 829 (7th Cir. 2004)...............................50

*Westra v. Credit Controls of Pinellas*, 409 F.3d 825 (7th Cir. 2005)....................................37

*Young v. Equifax Credit Information Services, Inc.*, 294 F.3d 631 (5th Cir. 2002)..............36

## FEDERAL STATUTES

15 U.S.C. § 1681a............................................................................................................49

15 U.S.C. § 1681i .............................................................................................................26

15 U.S.C. § 1681s-2(a) .....................................................................................................27

15 U.S.C. § 1681s-2(b) .....................................................................................................26

15 U.S.C. § 1681s-2(d) .....................................................................................................27

15 U.S.C. § 1621n.............................................................................................................35

15 U.S.C. § 1621o.............................................................................................................35

47 U.S.C. § 151, *et seq.* ......................................................................................... 52

47 U.S.C. § 201 ........................................................................................................ 52

47 U.S.C. § 202 ........................................................................................................ 13

47 U.S.C. § 258 ........................................................................................................ 53

**FEDERAL REGULATIONS AND ADMINISTRATIVE MATERIALS**

47 C.F.R. 1.719 ........................................................................................................ 55

*In the Matter of AT&T, Inc.*, 24 F.C.R.R. 11215, 11216,
    2009 WL 2751126 (F.C.C. Aug. 27, 2009) ................................................... 15

Tariff F.C.C. No. 29 ................................................................................................ 29

Defendant AT&T Corp. ("AT&T"), through its undersigned counsel, respectfully submits this Memorandum of Law in Support of its Motion for Summary Judgment.

## I.   INTRODUCTION

In his Second Amended Complaint (*Doc. No. 46*), Plaintiff Dennis Van Veen ("Plaintiff") alleges that AT&T reported false information to the credit reporting agencies, and that the information was not removed from his credit report after Plaintiff disputed its accuracy. Although he does not explain what information was allegedly false, Plaintiff purports to bring a claim against AT&T for violation of sections 1681n and 1681o of the Fair Credit Reporting Act ("FCRA").[1]

In reality, this is a relatively straightforward case involving a $64.12 bill for telephone calls that Plaintiff admits he and his wife made but never paid for.[2] The undisputed evidence, detailed below, demonstrates that Plaintiff's claims against AT&T are groundless.

First, AT&T never reported inaccurate information regarding Plaintiff to the credit reporting agencies. Plaintiff admits that he and his wife made numerous telephone calls, which were routed through AT&T's network by Plaintiff's own carrier, for which Plaintiff never paid.

---

[1]      15 U.S.C. §§1681, *et seq.*

[2]      As will be explained more fully below, Plaintiff (and/or his wife) made numerous telephone calls between April 28, 2007 and May 25, 2007, which were routed through AT&T's network by Plaintiff's own carrier. AT&T subsequently billed Plaintiff for those calls pursuant to the applicable federal tariff that would have applied to him as a non-subscriber. After Plaintiff complained about the charges, AT&T investigated the account and informed Plaintiff that he had been appropriately billed for the calls he placed, and that those calls may have been routed through AT&T's network because of a possible routing error by Plaintiff's own carrier. Nonetheless, AT&T subsequently issued Plaintiff a $139.63 credit. However, Plaintiff still refused to pay the remaining $64.12 he owed AT&T. The $64.12 balance due was eventually referred to an outside collection agency, but Plaintiff still refused to pay. AT&T eventually wrote Plaintiff's outstanding balance as a bad debt and later zeroed out the remaining $64.12 debt. AT&T subsequently informed the three major credit reporting agencies that there was a $0 balance associated with the account. In sum, Plaintiff made a series of telephone calls for which he never paid anyone. AT&T appropriately billed Plaintiff for those calls and accurately stated to the credit reporting agencies the amount due on Plaintiff's account.

Second, even if AT&T's credit reporting was inaccurate—which it was not—AT&T conducted a thorough investigation upon notification of Plaintiff's dispute by the credit reporting agencies. Thus, AT&T fully satisfied its obligations under the FCRA.

Third, as a matter of law, Plaintiff has not suffered any compensable damage caused by AT&T's alleged failure to perform a reasonable investigation of his credit reporting disputes. Simply put, Plaintiff's alleged injuries (*e.g.,* his alleged inability to receive a home equity loan from Navy Federal Credit Union ("NFCU") at its preferred interest rates) occurred months *before* AT&T was notified of any dispute by a credit reporting agency related to Plaintiff. For this and other reasons, AT&T cannot be held responsible for Plaintiff's alleged damages. Furthermore, as a matter of law, Plaintiff has not—and cannot—demonstrate any entitlement to punitive damages, damages for emotional distress, and/or certain specific actual damages.

Finally, to the extent that Plaintiff intends to pursue allegations that he was charged "exorbitant rates" or was the victim of "slamming" and "false billing," his claims implicate the doctrine of primary jurisdiction and should be referred to the Federal Communications Commission ("FCC").

In short, after the completion of extensive discovery, there remain no genuine issues as to any material fact, and Plaintiff cannot prevail on his FCRA claim. AT&T is not liable to Plaintiff and is therefore entitled to judgment as a matter of law.

## II.    RELEVANT PROCEDURAL HISTORY

Plaintiff initiated this action against former defendants Equifax Information Systems LLC ("Equifax"), Experian Information Solutions, Inc. ("Experian") and Trans Union, LLC ("Trans Union")[3] on April 14, 2010. *See* Docket Entry 1. Plaintiff filed an Amended Complaint on June

---

[3]     Equifax, Experian, and Trans Union are no longer parties to this action.

29, 2010 naming Equifax, Experian, Trans Union, and "AT&T, Inc." as defendants. *See* Docket Entry 18. On January 28, 2011, Plaintiff filed his operative Second Amended Complaint against AT&T Corp. and AT&T Credit Management Center. *See* Docket Entry 46. By Order dated May 18, 2011, AT&T Credit Management Center was dismissed from this action, with prejudice, leaving AT&T Corp. as the sole defendant. *See* Docket Entry 95.

By Order dated May 17, 2011, Counts II, III, and IV of the Second Amended Complaint (for alleged defamation, invasion of privacy/false light, and negligence) were dismissed with prejudice by joint stipulation. Docket Entry 91. By Order dated May 25, 2011, Count V of the Second Amended Complaint (for alleged violation of Pennsylvania's Unfair Trade Practices and Consumer Protection Law) was dismissed, Docket Entry 99, leaving only Plaintiff's FCRA claim against AT&T Corp.

Pursuant to the Court's Amended Scheduling Order dated June 2, 2011, discovery in this case was to be completed on or before June 17, 2011[4] and dispositive motions are due on or before July 8, 2011. *See* Docket Entry 103. *Accord* Fed. R. Civ. P. 56(b) ("[u]nless a different time is set by local rule or the court orders otherwise, a party may file a motion for summary judgment at any time until 30 days after the close of discovery").

## III.   STATEMENT OF UNDISPUTED MATERIAL FACTS

### A.   The Parties

1.     AT&T Corp. is a corporation formed under the laws of the State of New York and is a wholly-owned subsidiary of AT&T, Inc; AT&T, Inc.'s principal place of business is located at 208 S. Akard Street, Dallas, Texas, 75202. *See* Docket Entry 53 and Docket Entry 104 at ¶ 3.

---

[4]     On June 24, 2011, by agreement of the parties, Plaintiff completed his deposition of Trans Union. On June 23, 2011, The Federal Communications Commission filed a Motion to Quash Plaintiff's deposition subpoena directed to it. That motion is pending in the D.C. District Court as the miscellaneous action captioned *Federal Communications Commission v. Van Veen*, 1:11-mc-00361-ABJ (D.D.C.).

2.     AT&T is a common carrier as defined by the Communications Act of 1934, 47 U.S.C. §§ 151, *et seq. See, e.g.* Statistics of Communications Common Carriers (2006/2007 Edition), *available at* http://hraunfoss.fcc.gov/ edocs_public/attachmatch/DOC-301505A1.pdf.

3.     Plaintiff graduated from the University of Florida in 1985 with a degree in Economics, then obtained a Master's degree in Management from the Naval Postgraduate School in 1998. Van Veen Dep. 11:19-12:15.[5]

4.     Since 1998, Plaintiff has worked as a Logistics Analyst at Serco, Inc., where he consults the Department of Defense on logistics issues. Van Veen Dep. 12:21-14:3.

5.     Plaintiff served in the United States Navy for twenty years; he retired in 2007, at which time his rank was Lieutenant Commander. Van Veen Dep. 10:12-24.

6.     Plaintiff was married to Johanna Van Veen ("Mrs. Van Veen") from 1993 until 2008. Van Veen Dep. 17:5-13.

7.     Plaintiff has been living at 1328 Jeanette Way in Southampton, Pennsylvania since 2000; Mrs. Van Veen and their two children lived at the same address until she moved out in the first or second week of May, 2007. Van Veen Dep. 16:14-15, 17:2-4, 38:16-39:2.

8.     Although Plaintiff claims to have felt "a lot of stress" and "harassed" between late-2008 and early-2009 related to his refusal to pay AT&T's bill, he never saw a therapist or medical professional regarding any of the emotional distress he purports to have suffered in this action. Van Veen Dep. Tr. at 75:17-76:21, 110:11-119:7.

---

[5]     The portions of Plaintiff's February 24, 2011 deposition transcript (and its exhibits) that are cited throughout this Memorandum are included herewith as composite Exhibit A.

4

**B.**     **AT&T's Credit Reporting Procedures**

9.      As it is relevant to this litigation, AT&T writes-off certain customer accounts as bad debt when they are either: 180 days past due; referred to an outside collection agency but has an uncollectable balance less than $25; or, assigned to an outside collection agency but no payment has been received for 60 days thereafter. *See* Samaroo Dep. 103:4-6;[6] AT&T Trial Ex. 16.[7]

10.     For the purpose of this litigation, the terms "write-off" and "charge-off" refer to the same thing—*i.e.*, an unpaid balance reported as a loss.  Equifax Dep. Ex. 1.  AT&T Trial Ex. 16; Raso Dep. Tr. at 194:24-195:1.[8] *Accord* Samaroo Dep. 103:4-7.

11.     At all times relevant to this lawsuit, AT&T generally reported certain Legacy T accounts to credit reporting agencies at the time of write-off.  Samaroo Dep. 102:1-3.

12.     At all times relevant to this lawsuit, following AT&T's initial report that an account had been charged-off, AT&T would only report on the account again if there was a change in the account's status, *e.g.*, an adjustment or payment on the account.  Samaroo Dep. 291:17-292:3 and Ex. 4.

13.     Each credit reporting agency has access to the Online Solution for Complete and Accurate Reporting ("e-OSCAR") system.  When a consumer contacts a credit reporting agency with a dispute concerning AT&T's credit reporting, the agency transmits the disputed information to AT&T via an Automated Consumer Dispute Notification ("ACDV") in a standardized format called "Metro 2" through the E-OSCAR system.  Samaroo Dep. 108:18-

---

[6]     The portions of Stephen A. Samaroo's February 17, 2011 deposition transcript (and its exhibits) that are cited throughout this Memorandum are included herewith as composite Exhibit B.

[7]     Included herewith as Exhibit C.

[8]     The portions of Rebecca A. Raso's June 16, 2011 deposition transcript (and its exhibits) that are cited throughout this Memorandum are included herewith as composite Exhibit D.

109:17; Equifax Dep.[9] 9:5-8; Experian Dep.[10] 17:12-15, 35:17-36:8; Trans Union Dep.[11] 8:13-10:12 and Ex. 4. *See also* AT&T Trial Ex. 42.[12]

14.     At all times relevant to this lawsuit, NCO Financial Systems, Inc. ("NCO") performed certain credit and collections-related work on AT&T's behalf pursuant to an outsourcing services agreement; among other services, the AT&T-NCO agreement provides that NCO will provide, *inter alia*, inbound calling, outbound calling, and manual list work on certain Legacy accounts. *See generally* AT&T Trial Exhibit 26;[13] NCO-11-113.[14]

15.     At all times relevant to this lawsuit, pursuant to the contractual relationship between NCO and AT&T, ACDV analysts at NCO, *inter alia*, investigate and respond to ACDVs through the e-OSCAR system on behalf of AT&T. *See* Samaroo Dep. 79:16-80:9; Raso Dep. 201:4-12, 234:2-6. Jager Dep.[15] 16:4-14, 21:14-18, 84:21-85:1; Page Dep.[16] 11:2-7. *See also* ATT_125 to 670.

---

[9]     The portions of Equifax Information Services, LLC's (through Vicki Banks) June 15, 2011 deposition transcript (and its exhibits) that are cited throughout this Memorandum are included herewith as composite Exhibit E.

[10]    The portions of Experian Information Solutions' (through Jason Scott) June 15, 2011 deposition transcript (and its exhibits) that are cited throughout this Memorandum are included herewith as composite Exhibit F.

[11]    The portions of Trans Union Corporation's (through Steven C. Newcom) June 24, 2011 deposition transcript (and its exhibits) that are cited throughout this Memorandum are included herewith as composite Exhibit G.

[12]    Included herewith as Exhibit H.

[13]    A copy of AT&T Trial Exhibit 26 (Bates labeled ATT_125-670) was previously submitted to the Court on May 11, 2011.

[14]    Included herewith as Exhibit I.

[15]    The portions of Lourdes Jager's March 18, 2011 deposition transcript (and its exhibits) that are cited throughout this Memorandum are included herewith as composite Exhibit J.

[16]    The portions of Maria Page's March 18, 2011 deposition transcript (and its exhibits) that are cited throughout this Memorandum are included herewith as composite Exhibit K.

16.     NCO and its employees receive training on and comply with all applicable federal, state, local and foreign laws, ordinances, regulations and codes.  NCO 63; Page Dep. 25:10-11, 26:4-12.

17.     In responding to credit reporting disputes, the ACDV analysts follow work standards, guidelines, manuals, policies and procedures set forth by AT&T.  *See generally, e.g.,* Jager Dep. 21:17-18, 36:9-12, 42:20-43:9, 47:8-11, 54:20-23, and Exs. 5-9; Page Dep. 33:3-43:16 and Ex. 2; Raso Dep. 134:13-19 and Exs. 15-19; Trans Union Dep. 21:3-5 and Ex. 4. *Accord* Samaroo Dep. 283:12-15 and Ex. 1, 2; Jager Dep. Exs. 11, 12; AT&T Trial Exs. 26, 42.

18.     More specifically, the ACDV analyst will pull an ACDV down from e-OSCAR, determine the nature of the dispute, and investigate to determine whether the disputed information is correct or not.  *See* Raso Dep. 201:4-12 and Ex. 16; Jager Dep. Ex. 7.  *Accord* Page Dep. Ex. 2.

19.     Based on that review, the ACDV analyst will input an applicable response code indicating whether the reported information should be verified as reported, modified, or deleted. *See* Page Dep. Ex. 2; Jager Dep. Ex. 5, 7.  Experian Dep. 20:14-21:5; Trans Union Dep. 13:6-14:21; Equifax Dep. 13:6-21.

20.     In the course of his or her investigation in responding to an ACDV, the analyst will access various AT&T databases, including RCAM, CACS, and DPS, which contain information about customer accounts; these account records include, *inter alia*, a customer's address, last four Social Security number digits, bill dates and amounts, payment dates and amounts, account status, notes about the account, and other relevant information.  *See, e.g.,* Raso Dep. 75:11-76:4, 137:13-138:3, 150:17-22, 156:22-157:4, 266:8-19, and Exs. 6, 7, 11-13, 15-19;

7

Jager Dep. 13:25-14:8 and Exs. 5-9; Page Dep. 57:18-60:10 and Exs. 2-4; Samaroo Dep. 283:12-15; 306:17-307:7, 309:3-4, 310:1-7, 310:22-311:5, 312:4-15, and Exs. 1-6.

21.     In certain circumstances, the ACDV analyst's investigation will reveal that the disputed information should be deleted. Page Dep. 34:1-36:22 and Ex. 2; Jager Dep. Ex. 5, 7.

22.     In other circumstances, if the information reported is different than the information in AT&T's records, the ACDV analyst will request the credit reporting agency modify the information in its records by populating various fields in e-OSCAR's ACDV "Consumer Information" tab. *See* Page Dep. 34:1-36:22 and Exs. 2; Jager Dep. Ex. 5, 7, 11. *Accord* Raso Dep. 266:8-19.

23.     If a consumer's account has been charged-off by AT&T, the ACDV analyst will also populate certain information in e-OSCAR's "Account Information" tab. Along with other information, the ACDV analyst will:

       a. Input a "97" in the "Account Code" field to indicate the account has been charged-off by AT&T.

       b. Input a 4D in the "Account Type" field to indicate "Telecommunications."

       c. Fill in the "Date Opened" field with the date that AT&T first established service for the account (found on the CR screen in AT&T's RCAM database).

       d. Indicate the "Date of Account Information" by inputting the date of write-off found on the account history screen in AT&T's CACS database.

       e. Input as the "Date Closed" the closure date found on the account history screen in AT&T's CACS database.

       f. Indicate the first date the account appeared in AT&T's collection database as the "Date of Delinquency."

       g. Input (in whole dollar amounts, rounded-down) the account's "Current Balance," "Amount Past Due," and "Original Charge-off" amount.

       h. Leave certain fields blank, including: "Payment Rating," "Condition," "Special Comment," "Terms Duration," and "High Credit."

*See* Page Dep. 33:3-43:23 and Ex. 2. *Accord* Jager Dep. Exs. 5, 7, 12; Raso Dep. 266:8-19; Trans Union Dep. Ex. 4.

24.     Following an investigation and ACDV response, the ACDV analyst will make certain notes in NCO and AT&T's internal databases to indicate, *inter alia*, who worked on the account, what action was taken, and on what date. Jager Dep. 26:14-27:18 and Exs. 3-7; Page Dep. 21-19:7 and Ex. 2. *Accord* Jager Dep. Exs. 11 and 12.

### C.     Plaintiff's Account With AT&T

25.     Since approximately 2000, Plaintiff's land-line phone number has been (215) 322-4459. Van Veen Dep. 38:4-8. *See also* FCC 37.[17]

26.     Mrs. Van Veen set up local telephone service for phone number (215) 322-4459 through MCI, and long distance telephone service for phone number (215) 322-4459 through IDT. Van Veen Dep. 37:11-38:6, 40:3-41:3. *See also* FCC-37.

27.     IDT is a reseller of long distance service that relies on the underlying network of other service providers. *See* IDT-35[18] and FCC-46.

28.     When Plaintiff became an IDT customer in 2002, IDT was using AT&T's network as its underlying carrier for routing long distance calls; at the time, Plaintiff's line was part of a specific AT&T Software Defined Network ("SDN") platform within a Carrier Identification Code ("CIC") that IDT used; that CIC identified AT&T as Plaintiff's underlying long distance carrier, Plaintiff's long distance calls were electronically sent to IDT for billing at IDT's rates. FCC 37 and 46.

29.     For reasons not relevant to this lawsuit, IDT made several unsuccessful attempts in 2007 to migrate Plaintiff's line from one CIC within AT&T's network to another CIC within AT&T's network. FCC-37; IDT-17.[19]

---

[17]     A copy of the documents Bates labeled FCC 37, 41, and 45-46 is included herewith as composite Exhibit L.

[18]     A copy of IDT 34-35 is included herewith as Exhibit M.

30.     In the course of IDT's unsuccessful migration efforts, Plaintiff's line was removed from the SDN platform in late-April, 2007; however, because Plaintiff's telephone number remained presubscribed to the same CIC that identified AT&T as Plaintiff's underlying long distance carrier, calls made from Plaintiff's telephone number between late-April and May, 2007 defaulted to AT&T billing. FCC 37 and 46.

31.     Billing for Plaintiff's calls was restored to IDT on June 6, 2007, when IDT began routing Plaintiff's long distance calls through Global Crossing Telecommunications' Carrier Identification Code. Van Veen Dep. Ex. 14. *See also* FCC-37, 41, 46; IDT-17, 18.

32.     At no point during the time period relevant to this litigation was Plaintiff's account with IDT cancelled; moreover, AT&T made no solicitations to Plaintiff for long distance service, nor did it complete or attempt any changes in Plaintiff's long distance service. FCC-37, 46. IDT-16, 17; *Accord* ATT_336-37 and NCO – 92-93[20] (prohibiting fraudulent solicitation of other common carriers' customer switching).

33.     During April and May, 2007, Plaintiff, Mrs. Van Veen, and their two children were authorized to make telephone calls from telephone number (215) 322-4459. Van Veen Dep. 44:5-10.

34.     From April 28, 2007 through May 11, 2007, Plaintiff and/or Mrs. Van Veen made the following twelve telephone calls which were routed through AT&T's network by IDT:

> a.  At approximately 7:08 p.m. on April 28, 2007, either Plaintiff or Mrs. Van Veen made a telephone call lasting approximately 25 minutes to (571) 830-6245 from

---

(...continued)

[19]     A copy of IDT-14-20 is included herewith as Exhibit N.

[20]     A copy of NCO-11-113 (which was also produced among ATT_125-670) is included herewith as Exhibit I.

telephone number (215) 322-4459.  Van Veen Dep. 43:10-45:13 and Ex. 2.  *See also* Plaintiff's Response to AT&T's Request for Admission No. 1.[21]

b.  At approximately 8:10 a.m. on April 29, 2007, either Plaintiff or Mrs. Van Veen made a telephone call lasting approximately 25 minutes to telephone number 3544216911 from telephone number (215) 322-4459.  Van Veen Dep. 43:10-45:13 and Ex. 2. *See also* Plaintiff's Response to AT&T's Request for Admission No. 2.

c.  At approximately 2:59 p.m. on April 29, 2007, either Plaintiff or Mrs. Van Veen made a telephone call lasting approximately 2 minutes to telephone number (609) 723-1138 from telephone number (215) 322-4459.  Van Veen Dep. 43:10-45:13 and Ex. 2. *See also* Plaintiff's Response to AT&T's Request for Admission No. 3.

d.  At approximately 5:51 p.m. on April 29, 2007, either Plaintiff or Mrs. Van Veen made a telephone call lasting approximately 1 minute to telephone number (609) 723-1138 from telephone number (215) 322-4459.  Van Veen Dep. 43:10-45:13 and Ex. 2. *See also* Plaintiff's Response to AT&T's Request for Admission No. 4.

e.  At approximately 2:02 p.m. on April 30, 2007,  either Plaintiff or Mrs. Van Veen made a telephone call lasting approximately 1 minute to telephone number (609) 724-8468 from telephone number (215) 322-4459.  Van Veen Dep. 43:10-45:13 and Ex. 2. *See also* Plaintiff's Response to AT&T's Request for Admission No. 5.

f.  At approximately 2:03 p.m. on April 30, 2007, either Plaintiff or Mrs. Van Veen made a telephone call lasting approximately 1 minute to telephone number (609) 723-1138 from telephone number (215) 322-4459. Van Veen Dep. 43:10-45:13 and Ex. 2. *See also* Plaintiff's Response to AT&T's Request for Admission No. 6.

g.  At approximately 2:25 p.m. on May 2, 2007, either Plaintiff or Mrs. Van Veen made a telephone call lasting approximately 6 minutes to telephone number 3544214434 from telephone number (215) 322-4459.  Van Veen Dep. 43:10-45:13 and Ex. 2. *See also* Plaintiff's Response to AT&T's Request for Admission No. 7.

h.  At approximately 4:40 p.m. on May 7, 2007, either Plaintiff or Mrs. Van Veen made a telephone call lasting approximately 2 minutes to telephone number (267) 614-3044 from telephone number (215) 322-4459.  Van Veen Dep. 43:10-45:13 and Ex. 2. *See also* Plaintiff's Response to AT&T's Request for Admission No. 8.

i.  At approximately 6:52 p.m. on May 9, 2007, either Plaintiff or Mrs. Van Veen made a telephone call lasting approximately 2 minutes to telephone number (610) 692-4367 from telephone number (215) 322-4459.  Van Veen Dep. 43:10-45:13 and Ex. 2. *See also* Plaintiff's Response to AT&T's Request for Admission No. 9.

j.  At approximately 7:17 p.m. on May 9, 2007, either Plaintiff or Mrs. Van Veen made a telephone call lasting approximately 1 minute to telephone number (610) 338-7700 from telephone number (215) 322-4459.  Van Veen Dep. 43:10-45:13

---

[21]  Plaintiff's Responses to AT&T's Requests for Admission are included herewith as Exhibit O.

and Ex. 2. *See also* Plaintiff's Response to AT&T's Request for Admission No. 10.

    k.  At approximately 5:34 p.m. on May 10, 2007, either Plaintiff or Mrs. Van Veen made a telephone call lasting approximately 3 minutes to telephone number (267) 614-3044 from telephone number (215) 322-4459.  Van Veen Dep. 43:10-45:13 and Ex. 2. *See also* Plaintiff's Response to AT&T's Request for Admission No. 11.

    l.  At approximately 3:58 p.m. on May 11, 2007, either Plaintiff or Mrs. Van Veen made a telephone call lasting approximately 13 minutes to telephone number (703) 490-0000 from telephone number (215) 322-4459.  Van Veen Dep. 43:10-45:13 and Ex. 2. *See also* Plaintiff's Response to AT&T's Request for Admission No. 12.

    35.  From May 16, 2007 through May 25, 2007, Plaintiff and/or Mrs. Van Veen made

the following nine telephone calls which were routed through AT&T's network by IDT:

    a.  At approximately 3:26 p.m. on May 16, 2007, either Plaintiff or Mrs. Van Veen made a telephone call lasting approximately 1 minute to telephone number (215) 589-5842 from telephone number (215) 322-4459.  Van Veen Dep. 45:14-19 and Ex. 3.

    b.  At approximately 3:26 p.m. on May 16, 2007, either Plaintiff or Mrs. Van Veen made a telephone call lasting approximately 20 minutes to telephone number (215) 589-5842 from telephone number (215) 322-4459.  Van Veen Dep. 45:14-19 and Ex. 3.

    c.  At approximately 6:48 p.m. on May 16, 2007, either Plaintiff or Mrs. Van Veen made a telephone call lasting approximately 2 minutes to telephone number (267) 614-3044 from telephone number (215) 322-4459.  Van Veen Dep. 45:14-19 and Ex. 3.

    d.  At approximately 6:52 p.m. on May 16, 2007, either Plaintiff or Mrs. Van Veen made a telephone call lasting approximately 1 minute to telephone number (215) 932-9312 from telephone number (215) 322-4459.  Van Veen Dep. 45:14-19 and Ex. 3.

    e.  At approximately 10:14 p.m. on May 16, 2007, either Plaintiff or Mrs. Van Veen made a telephone call lasting approximately 4 minutes to telephone number (215) 589-5842 from telephone number (215) 322-4459.  Van Veen Dep. 45:14-19 and Ex. 3.

    f.  At approximately 11:22 p.m. on May 16, 2007, either Plaintiff or Mrs. Van Veen made a telephone call lasting approximately 1 minute to telephone number (215) 589-5842 from telephone number (215) 322-4459.  Van Veen Dep. 45:14-19 and Ex. 3.

    g.  At approximately 4:06 p.m. on May 20, 2007, either Plaintiff or Mrs. Van Veen made a telephone call lasting approximately 1 minute to telephone number (267)

614-3044 from telephone number (215) 322-4459. Van Veen Dep. 45:14-19 and Ex. 3.

h.  At approximately 9:31 a.m. on May 25, 2007, either Plaintiff or Mrs. Van Veen made a telephone call lasting approximately 8 minutes to telephone number (609) 723-1138 from telephone number (215) 322-4459. Van Veen Dep. 45:14-19 and Ex. 3.

i.  At approximately 2:17 p.m. on May 25, 2007, either Plaintiff or Mrs. Van Veen made a telephone call lasting approximately 2 minutes to telephone number (856) 649-3521 from telephone number (215) 322-4459. Van Veen Dep. 45:14-19 and Ex. 3.

36.  The calls described in Paragraphs 34 and 35, *supra*, came across AT&T's network through no action of AT&T. *See* Samaroo Dep. 218:2-7, 222:13-14, and Exs. 3, 4, 14; Van Veen 24, 138; FCC 37, 41, 45-46.

37.  As a common carrier, AT&T was required to carry those calls on terms that are just, reasonable, and non-discriminatory. 47 U.S.C. § 202(a).

38.  In its normal course of business, when a non-customer's calls come across AT&T's network, AT&T will work with the non-customer's local exchange carrier ("LEC") to gather information necessary to accurately bill the individual from whose telephone number those calls were made. Samaroo Dep. 222:13-223:13.

39.  In early-May, 2007, shortly after the calls described in Paragraphs 34 and 35 came across AT&T's network, AT&T received information necessary to accurately bill for those calls from Plaintiff's LEC. Samaroo Dep. 230:4-10, 230:22-231:3.

40.  AT&T subsequently billed Plaintiff for the calls described in Paragraphs 34 and 35 pursuant to the applicable federal tariff that would have applied to him as a non-subscriber. Van Veen Dep. Tr. at Exs. 2 and 3. *See also* Samaroo Dep. 218:2-7, 230:4-10, 230:22-231:3.

41.  In late-May or early-June, 2007, Plaintiff received a bill in the amount of $181.04 from AT&T for the calls described in Paragraph 34, *supra*; that bill indicated a June 10, 2007 due date for payment. Van Veen Dep. 22:2-17 and Ex. 2.

42.     In late-June 2007, Plaintiff received a bill from AT&T in the amount of $202.18 (representing the unpaid balance from the previous as well as current charges for the nine additional telephone calls referenced in Paragraph 35, *supra*); the first page of that bill clearly stated that "[f]ailure to pay the balance due may result in negative reporting to the credit bureau." Van Veen Dep. 22:18-23:7 and Ex. 3.

43.     Plaintiff has never been independently billed by MCI, IDT, or any other carrier besides AT&T for the calls described in Paragraphs 34 or 35, *supra*. Van Veen Dep. 48:2-4, 49:9-21, 58:17-20, and 94:18-22.

44.     Plaintiff has never paid AT&T or anyone else for the calls described in Paragraphs 34 or 35, *supra*. Van Veen Dep. 47:11-12, 48:2-4, 49:9-21, 51:2-6, 58:17-20, 72:22-23, 84:6-9, 98:11-16, 94:18-22; Raso Dep. 279:22-24.

45.     As of June 16, 2007, Plaintiff owed AT&T $202.18 for the calls described in Paragraphs 34 and 35, *supra*. Samaroo Dep. 214:14-23 and Ex. 12; Raso Dep. Ex. 11.

46.     In June, 2007, AT&T agreed to a courtesy adjustment to re-rate the calls described in Paragraph 34 and 35, *supra*, and a credit of $139.63 was issued. Samaroo Dep. 216:17-2:17:2 and Ex. 13; Raso Dep. 32:8-11, 34:10-13, 78:18-80:20, and Exs. 9, 11. *See also* Van Veen Dep. 82:1-6.

47.     As of August 16, 2007, Plaintiff owed AT&T $64.12 for the calls described in Paragraphs 34 and 35, *supra* to match the rate Plaintiff would have paid with IDT. Van Veen-12-14;[22] Raso Dep. Ex. 11; Samaroo Dep. Ex. 14. *Accord* Van Veen Dep. 97:6-18 and Ex. 12.

---

[22]     Included herewith as Exhibit P.

48.     In or around September, 2007, Plaintiff received a Balance Due Statement from G.C. Services Limited Partnership, a collection agency, related to the $64.12 he owed AT&T. *See* Van Veen Dep. 49:23-51:1, 97:6-98:10, and Ex. 12.

49.     Despite the fact that the Balance Due Statement clearly explained that "we will continue with collection activity" if Plaintiff did not submit the balance due, Plaintiff did not remit any payment to G.C. Services Limited Partnership or AT&T. *Id.* at 58:17-20 and Ex. 12.

50.     Prior to December 26, 2007, AT&T had never reported Plaintiff's account to the credit reporting agencies; in accordance with applicable policies, AT&T wrote off Plaintiff's $64.12 balance due on December 26, 2007 and, for the first time, reported Plaintiff's account as charged-off shortly thereafter.  *See* Samaroo Dep. Tr. at 102:1-3, 102:8-103:22, 171:8-88, and Ex. 1-4, 7; AT&T Trial Ex. 16; Jager Dep. Ex. 5; Equifax Dep. 34:16-35:16, 43:24-44:3; Experian Dep. Ex. 1. *See also* Raso Dep. Tr. at 194:18-23 and Ex. 14; Trans Union Dep. 28:16-20. *Accord* Van Veen Dep. 70:4-8, 83:19-84:9.

51.     Between 2007 and early 2009, Plaintiff complained to AT&T, MCI, IDT, GC Services Limited Partnership, the FCC, the Pennsylvania Attorney General, and the Pennsylvania Utilities Commission regarding the balance he owed AT&T.  None of these entities ever made a finding of wrongdoing or liability against AT&T vis-à-vis Plaintiff. *See* Van Veen Dep. 77:2-78:15 and Exs. 9-11, 13, 14; *In the Matter of AT&T, Inc.*, 24 F.C.R.R. 11215, 11216, 2009 WL 2751126 at *2 (F.C.C. Aug. 27, 2009). *See also* Samaroo Dep. Ex. 14.

52.     AT&T's Executive Appeals department thoroughly investigated Plaintiff's account, found that there was no fault or problem on AT&T's part, determined that Plaintiff was not billed in error, and sustained the charges Plaintiff had incurred.  AT&T noted its internal databases and notified Plaintiff regarding the result of this investigation.  If the Executive

Appeals department's investigation had found that Plaintiff's complaint were valid, AT&T would have adjusted the charges accordingly, retrieved the account from collections, and requested that the credit reporting agencies delete any negative tradeline. Samaroo Dep. 237:15-18 and Ex. 14; Van Veen Dep. 103:18-104:5, 105:2-4, and Ex. 13; Raso Dep. 182:12-183:21 and Ex. 7.

53.     On March 12, 2009, AT&T issued a courtesy adjustment of $64.12, leaving a zero balance on Plaintiff's account; because the underlying charges on Plaintiff's account were valid and accurately reported as charged-off, AT&T did not request that the credit reporting agencies delete the tradeline related to Plaintiff's account.   Raso Dep. 93:18-21, 277:14-21, 280:1-3, 280:14-20, 287:4-6. *See also* FCC-46; Samaroo Dep. 271:13-23.

54.     On May 1, 2009, AT&T informed the three major credit reporting agencies that Plaintiff's account had a zero balance.  Samaroo Dep. 291:19-292:3 and Exs. 3, 4 at pp. ATT_36 and 860; Raso Dep. Exs. 6, 7 at pp. ATT_36 and 860; Experian Dep. 35:7-9 and Ex. 3; Trans Union Dep. 41:6-11 and Ex. 3; Equifax Dep. 34:16-35:16 and Ex. 1.

55.     As a result of AT&T's making an adjustment to zero-out Plaintiff's then-closed account, AT&T's internal system registered the account as reinstated and a bill for $10.32 (representing a monthly recurring charge plus applicable taxes and fees) was generated; in any event, AT&T adjusted the $10.32 balance due to $0 before the August 30, 2009 due date stated on the bill. *See* ATT_20-23; Raso Dep. 265: 2-12 and Exs. 6, 7, 11-14; ATT_021 to 023, 35, 857, 858. *Accord* Samaroo Dep. 296:22-297:17

56.     AT&T later requested deletion of the account and, by May 19, 2010, no mention of AT&T appeared on Plaintiff's credit report.  *See* Van Veen Dep. 24:23-25:23, 70:11-72:17, and Ex. 6; Experian Dep. 35:7-9, 35:24-36:2.

**D.**   **Plaintiff's Navy Federal Credit Union Loan**

57.    On December 1, 2008, Plaintiff secured a 20-year, $30,000 home equity loan from Navy Federal Credit Union (the "NFCU loan"). Van Veen Dep. Tr. at 23:22-24:15, 89:17-23 and Ex. 5.

58.    The Note securing Plaintiff's NFCU loan had a stated interest rate of 7.75%, but Plaintiff obtained a discounted interest rate for having the NFCU paid automatically from a Navy Federal checking account. Van Veen Dep. 23:22-24:15, and Ex. 5.

59.    Pursuant to the terms of the Supplemental Note Addendum to the NFCU loan, Plaintiff agreed to make interest-only payments for the first 60 months of the NFCU loan; those payments were to begin on February 1, 2009. Van Veen Dep. Ex. 5 at page Van Veen 217-218. Pursuant to the terms of another Addendum to the Note securing Plaintiff's NFCU loan, Plaintiff agreed to reimburse Navy Federal Credit Union $193 in closing costs if he paid off the NFCU loan earlier than December 5, 2011. Van Veen Dep. Ex. 5 at page Van Veen 219.

60.    For a year and eight months, Plaintiff made monthly interest-only payments in the amount of $187.50 on the NFCU loan. Van Veen Dep. Tr. at 62:11-24 and Van Veen-169.[23] The NFCU loan was paid off in full on or before September 8, 2010 and a Satisfaction of Mortgage reflecting same was recorded in the Bucks County Public Record. *See* Instrument No. 2010061280, filed at Book 6493, Pages 107-109 in the Bucks County Public Record.[24] *See also* Van Veen Dep. 62:11-14.

---

[23]     Included herewith as Exhibit R.

[24]     Included herewith as Exhibit S.

**E.    Plaintiff's Dispute With Respect To AT&T's Credit Reporting**

61.    At all times relevant to this lawsuit, AT&T accurately reported information about Plaintiff's account to the credit reporting agencies. *See, e.g.*, Samaroo Dep. 283:1-15, 285:22-286:9, 291:10-292:16, 306:17-307:18, 308:10-17; 308:21-309:5, 309:21-310:7, 311:16-18, 313:6-8.

62.    ACDV analysts at NCO, on behalf of AT&T and in accordance with all applicable policies and procedures, thoroughly investigated and responded to three ACDVs pertaining to Plaintiff. Jager 20:19-22, 27:7-15, 32:19-33:16, and 34:1-12; Raso Dep. 243:7-10. *Accord* Experian Dep. Ex. 2; Equifax Dep. Ex. 1; Trans Union Dep. Ex. 1.

63.    There is no reason to believe that the ACDV analyst(s) responding to ACDVs regarding Plaintiff's AT&T account failed to follow the established procedures in verifying the accuracy and status of Plaintiff's unpaid debt. *See, e.g.* Rasso Dep. 268:5-9. Jaeger Dep. at 13:25-14:8; 26:14-27:18.

64.    Plaintiff never submitted to the credit reporting agencies a Customer Statement or other narrative to be included with his credit report regarding the reference to AT&T on his credit report. Trans Union Dep. 39:24-40:19 and Exs. 1-3. *Accord* Equifax Dep. 37:10-39:2, 45:11-23 and Exs. 1-3; Experian Dep. 32:3-18, and Exs. 1-3.

**1.    The Experian ACDV**

65.    On or about April 1, 2009, Experian transmitted an ACDV related to Plaintiff to AT&T (the "Experian ACDV"). *See* Experian Dep. 19:20-25 and Ex. 2.

66.    The April, 2009 Experian ACDV was the first ACDV AT&T ever received regarding any dispute by Van Veen. *See generally* Jager Dep., Page Dep., and Raso Dep.

67.    With respect to the nature of Van Veen's dispute, the Experian ACDV only provided "112 – Claims inaccurate information. Did not provide specific dispute. Provide

18

complete ID and verify account information. ATANDT PROVIDED A STATEMENT TO ME THAT SAID I OWED NOTHING TO THEM." Experian Dep. 30:1-6 and Ex. 2.

68.     Prior to April, 2009, AT&T had only reported Plaintiff's account to the credit reporting agencies one time—*i.e.* as a \$64 balance charged-off in December, 2007. *See* Samaroo Dep. 102:24-103:6, 291:17-292:3, and Ex. 4; Experian 24:12-18 and Exs. 1, 2; Trans Union Dep. 42:14-19 and Ex. 1; Equifax Dep. Ex. 1.

69.     On behalf of AT&T, an ACDV analyst at NCO reviewed and thoroughly investigated the disputed information conveyed in Experian's ACDV, then timely responded through e-OSCAR on April 29, 2009. *See* Experian Dep. 20:8-9 and Ex. 2; Raso Dep. 109:13-111:17; 137:13-138:22; 150:17-22, 156:22-160:22, 162:9-24, 266:5-19, and Exs. 6, 7, 11-13; Jager Dep. 27:7-15; Samaroo Dep. 310:22-312:15, 313:6-8. *See also* Page Dep. 32:1-43:23 and Ex. 2.

70.     In order to investigate the dispute conveyed by Experian, the ACDV analyst first accessed the e-OSCAR system to ascertain precisely what Experian's records showed that AT&T had reported with respect to Plaintiff's account. At that time, Experian's records showed, *inter alia*:

| Name: | DENNIS VAN VEEN | | | |
|---|---|---|---|---|
| Current Address: | 1328 JEANETTE WAY SOUTHAMPTON, PA | | Acct Status/Rating: | |
| Zip: | 18966 | | Account Condition / Cumm Status: | CHARGE OFF |
| Account No. | 711090833401 | | Charge Off Amt: | 64 |
| Balance: | 64 | | Type: | 4D |
| Balance Date: | 01/16/2008 | | Terms: | 001 |
| Amt Past Due: | 64 | | Date Last Pay: | |
| Orig Delinq Date: | | | Open Date: | 05/07/2007 |
| High Credit Balance: | 64 | | Closed Date: | |

*See* Raso Dep. 201:4-12 and Ex. 16; Experian Dep. 24:2-22, 26:6-9, and Ex. 2.

19

71.     The ACDV analyst then accessed AT&T's databases, including RCAM, CACS, and DPS in order to examine Plaintiff's account information, including his name, address, last four Social Security number digits, balance dates and amounts, payment history, account status, and notes about the account. Based on the information that she reviewed, the ACDV analyst was able to confirm that the disputed account belonged to Plaintiff and that he had owed AT&T $64. Raso Dep. 266:8-19; Jager Dep. 13:25-14:8; Samaroo Dep. 306:17-307:7; Samaroo Dep. 283:12-15; 306:24-307:7, 309:3-4, 310:1-7, 310:22-311:5, 312:4-15. *See also* Page Dep. 32:1-43:23 and Ex. 2. *Accord* Page Dep. 57:18-60:10; Raso Dep. 75:11-76:4, 137:13-138:3, 150:17-22, 156:22-157:4.

72.     In responding to the Experian ACDV, the analyst requested that Experian modify the information it had on file regarding how Plaintiff's name was spelled, original delinquency date (to July, 2007), charge-off date (from January, 2008 to December, 2007), the date closed (to August, 2007), and account status. *See* Experian Dep. 22:11-15, 31:1-9, 34:1-7, and Ex. 2; Raso Dep. 137:13-138:22; 150:17-22, 156:22-160:22, 162:9-24, 266:5-19, and Exs. 6, 7, 11-13; Jager Dep. 27:7-15; Samaroo Dep. 310:22-312:15, 313:6-8. *See also* Page Dep. 32:1-43:23 and Ex. 2.

73.     The information provided by AT&T in response to the Experian ACDV was accurate. *See* Raso Dep. 111:14-17 and Ex. 6, 7, 11,-14; Samaroo Dep. 279:4-12, 283:1-15; 285:22-286:9, 311:16-18. *Accord* Van Veen 30-31.[25]

### 2.     The Trans Union ACDV

74.     On or about April 24, 2009, Trans Union transmitted an ACDV related to Plaintiff to AT&T (the "Trans Union ACDV"). *See* Trans Union Dep. Ex. 1.

---

[25]     Included herewith as Exhibit T.

75. With respect to the nature of Van Veen's dispute, the Trans Union ACDV only provided "Disp Curr Bal-Verify Orig Loan Amt, Schld Monthly Pymt Amt, Actl Pymt Amt, Amt Past Due, Curr Bal, and Orig Chargoff Amt Claims company will change. Verify all account information" and "Unable to authenticate documentation dated 03/16/2009." Trans Union Dep. 37:6-38:6 and Ex. 1.

76. The ACDV analyst thoroughly investigated the disputed information conveyed in Trans Union's ACDV, then timely responded through e-OSCAR on May 1, 2009. Page Dep. 31:10-13. *Accord* Trans Union Dep. Ex. 1.

77. The ACDV analyst first accessed the e-OSCAR system to ascertain precisely what Trans Union's records showed that AT&T had reported with respect to Van Veen's account. At that time, Trans Union's records showed, *inter alia*:

| Name: | VANVEEN, DENNIS GERARD | Past Due: | $64 |
|---|---|---|---|
| Current Address: | 1328 JEANETTE WY SOUTHAMPTON, PA | Dt 1st Del: | 08/07 |
| Zip: | 18966 | High Credit: | $64 |
| Phone: | 999-322-4459 | Last Pymt: | |
| Account Number: | 711090833401 | Acct Status: | 97 |
| Loan Type: | TELECOMMUNICATIO | Sp. Comments / Status / Remarks | PRL – PROFIT AND LOSS WRITEOF |
| Bal Owing: | $64 | Opened: | 05/07 |
| Ver'd: | 01/08 | Closed: | 01/08 |

Raso Dep. 201:4-12; ATT_0874-0882; Page Dep. 32:1-43:23 and Ex. 2; Trans Union Dep. 15:4-11, 22:13-23:2, 42:14-43:11 and Ex. 1.

78. The ACDV analyst then accessed AT&T's databases, including RCAM, CACS, and DPS in order to examine Van Veen's account information, including his name, address, last four Social Security number digits, balance dates and amounts, payment history, account status, and notes about the account. Based on the information that she reviewed, the ACDV analyst was able to confirm that AT&T had not agreed to delete the tradeline regarding Plaintiff's account,

21

and was able to verify all of Plaintiff's account information, including his original and current balance, payment history, amount past due and charged-off. Raso Dep. 266:8-19; Jager Dep. 13:25-14:8; Samaroo Dep. 283:12-15; 306:24-307:7, 309:3-4, 310:1-7, 310:22-311:5, 312:4-15, and Ex. 17. *See also* Page Dep. 32:1-43:23 and Ex. 2. *Accord* Page Dep. 57:18-60:10; Raso Dep. 75:11-76:4, 137:13-138:3, 150:17-22, 156:22-157:4.

79.     In responding to the Trans Union ACDV, the analyst requested that Trans Union modify the information it had on file relating to Plaintiff's past-due amount (from $64 to $0), balance due (from $64 to $0), date of first delinquency (from August, 2007 to July, 2007), and charge-off date (from January, 2008 to December, 2007); the analyst also requested that Trans Union correct the telephone number it had on file for Plaintiff.   Trans Union Dep. 15:7-15, 42:14-43:11, and Exs. 1, 2; Page Dep. 31:10-13; Samaroo Dep. 310:22-312:15, 313:6-8; Raso Dep. 137:13-138:22; 150:17-22, 156:22-160:22, 162:9-24, 266:5-19, and Exs. 6, 7, 11-13; Jager Dep. 32:19-33:16.

80.     The information provided by AT&T in response to the Trans Union ACDV was accurate. Page Dep. 31:10-13; Raso Dep. 117:2-17 and Ex. 6, 7, 11, -14.  Samaroo Dep. 291:10-292:16, 311:16-18.

### 3.     The Equifax ACDV

81.     On or about August 17, 2009, Equifax transmitted an ACDV related to Plaintiff to AT&T (the "Equifax ACDV).  Equifax Dep. 11:12-20 and Ex. 1.

82.     As explained in ¶ 54, *supra*, on May 1, 2009, AT&T had reported to Equifax and the other credit reporting agencies that Plaintiff's account had a zero balance.  ATT_36 and 860. *Accord* Samaroo Dep. 291:19-292:3.

22

83.     With respect to the nature of Plaintiff's dispute, the Equifax ACDV only provided "[020] CLAIMS TRUE IDENTITY FRAUD – ACCOUNT FRAUDULENTLY OPENED INITIATE INVESTIGATION." Equifax Dep. 30:10-14 and Ex. 1.

84.     On behalf of AT&T, an ACDV analyst at NCO reviewed and thoroughly investigated the disputed information conveyed in Equifax's ACDV, then timely responded through e-OSCAR on August 18, 2009. Raso Dep. 119:10-12, 122:22-123:15, 137:13-138:22; 150:17-22, 156:22-160:22, 162:9-24 and Exs. 6, 7, 11-13; Samaroo Dep. 310:22-312:15, 313:6-8; Jager Dep. 34:1-12; Equifax Dep. 12:8-10 and Ex. 1.

85.     The ACDV analyst first accessed the e-OSCAR system to ascertain precisely what Equifax's records showed that AT&T had reported with respect to Plaintiff's account. At that time, Equifax's records showed, *inter alia*:

| Name: | VANVEEN DENNIS G | | | |
|---|---|---|---|---|
| Address: | 1328 JEANETTE WAY, SOUTHAMPTON, PA 18966 | | Original Charge-Off: | |
| Phone: | 215-322-4459 | | Date 1st Del: | 07/2007 |
| Account Number: | 711090833401 | | Last Payment Date: | |
| Account Type: | 4D | | Date Closed: | |
| Date Open: | 05/2007 | | Date of Account Info: | 05/2009 |
| Current Balance: | $0 | | Account Status: | [97] Unpaid balance reported as a loss by credit grantor (charge-off) |
| Past Due: | $0 | | Payment Rating: | [L] Charge-Off |

Raso Dep. 201:4-12; ATT_0874-0882; Equifax Dep. 16:8-16, 21:6-13, 33:17-19, and Ex. 1. *Accord* Equifax Dep. 17:1-23, 18:17-22.

86.     The ACDV analyst then accessed AT&T's databases, including RCAM, CACS, and DPS in order to examine Van Veen's account information, including his name, address, last four Social Security number digits, balance dates and amounts, payment history, account status, and notes about the account. Based on the information that she reviewed, the ACDV analyst was

23

able to determine that the disputed account did belong to Plaintiff and was not a result of fraud. Raso Dep. 75:11-76:4, 137:13-138:3, 150:17-22, 156:22-157:4, 182:11-183:21, 266:8-19, and Exs. 6, 7, 11-13, 15-19; Jager Dep. 13:25-14:8 and Exs. 5-9; Samaroo Dep. 283:12-15; 306:17-307:7, 309:3-4, 310:1-7, 310:22-311:5, 312:4-15. *See also* Page Dep. 32:1-43:23, 57:18-60:10, and Ex. 2. *Accord* Samaroo Dep. 14; Raso Dep. Ex. 14.

87.     As of August 17, 2009, Plaintiff's account was showing a $10.32 balance; as explained above, this was the result of AT&T's zeroing-out Plaintiff's then-closed account, which caused AT&T's internal system to register the account as reinstated, thereby triggering a monthly recurring charge (with its applicable taxes and fees). *See* ATT_20-22; Raso Dep. 265: 2-12 and Exs. 6, 7, 11-14; ATT_021 to 023, 35, 857, 858. *Accord* Samaroo Dep. 296:22-297:17.

88.     Accordingly, the ACDV analyst responded to Equifax's ACDV by requesting that Equifax modify the information it had on file regarding current balance (from $0 to $10), charge-off date and amount (to $64 in December, 2007), and date closed (to August, 2007); the analyst also requested that Equifax correct the address information it had on file for Plaintiff. Equifax Dep. 11:24-12:10, 15:9-10, 16:17-22, 18:23-20:22, 31:11-32:1, 32:3-20, and Ex. 1; Raso Dep. 119:10-12, 122:22-123:15, 137:13-138:22; 150:17-22, 156:22-160:22, 162:9-24 and Exs. 6, 7, 11-13; Samaroo Dep. 310:22-312:15, 313:6-8; Jager Dep. 34:1-12.

89.     The information provided by AT&T in response to the Equifax ACDV was accurate. Raso Dep. 122:22-123:15 and Ex. 6, 7, 11, -14. Samaroo Dep. 306:17-307:18, 308:10-17; 308:21-309:5; 309:21-310:7, 311:16-18.

## IV.   ARGUMENT

### A.   Standard of Review

The "underlying purpose of summary judgment is to avoid a pointless trial in cases where it is unnecessary and would only cause delay and expense." *Anthony v. Duff & Phelps Corp.,*

No. 09-3918, 2010 WL 3222188 at *1 (E.D.Pa. Aug. 12, 2010) (quoting *Walden v. Saint Gobain Corp.*, 323 F. Supp. 2d 637, 641 (E.D.Pa.2004)). Summary judgment must be granted when the pleadings, affidavits, and discovery materials produce no "genuine issue as to any material fact" and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The non-moving party cannot escape summary judgment by introducing "a mere scintilla of evidence" in its favor, *Sarko v. Penn-Del Directory Co.*, 968 F.Supp. 1026, 1031 (E.D. Pa. 1997) (citation omitted), *aff'd*, 189 F.3d 464 (3d Cir. 1999), or by relying on conclusory allegations, improbable inferences, or unsupported speculation, *Solt v. Alpo Petfoods, Inc.*, 837 F. Supp. 681, 686 (E.D. Pa. 1993), *aff'd*, 30 F.3d 1488 (3d Cir. 1994). "[W]hen the record, taken as a whole, could not lead a rational trier of fact to find for the non-moving party," the moving party is entitled to summary judgment in its favor. *Schoonejongen v. Curtiss-Wright Corp.*, 143 F.3d 120, 129 (3d Cir. 1998) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)).

## B.   Plaintiff's Allegations

Plaintiff's FCRA claim is supported neither by applicable law nor the factual record in this case. In his Pretrial Memorandum, Plaintiff explains his theory of the case as follows:

In or around May 2007, Plaintiff began receiving bills from [AT&T] charging him exorbitant rates for long distance calls that he placed in the months of April and May. * * * Plaintiff had no contractual relationship whatsoever with AT&T. Plaintiff further never authorized any change of his long distance carrier from IDT to AT&T. * * * Accordingly, Plaintiff had no legal responsibility to pay AT&T anything at all for the charges that AT&T assessed against him.

Docket Entry 89 at p. 2. On these unsubstantiated allegations, Plaintiff claims that AT&T failed to conduct a reasonable investigation with respect to his disputes to the three major credit reporting agencies because AT&T purportedly "fail[ed] to delete the [allegedly] inaccurate account" or mark it "disputed." *Id.*; Second Amended Complaint (*Doc. No.* 46) at ¶ 12. In fact, AT&T properly billed Plaintiff for telephone calls that he admits making and for which he was

25

obligated to pay. *Accord AT&T v. Dataway, Inc.*, 577 F.Supp. 2d 1099, 1105 (N.D.Cal. 2008) (customer liable for all long-distance calls made from its premises, regardless of whether such calls were authorized or fraudulent); *AT&T v. Community Health Group,* 931 F. Supp. 719, 723 (S.D. Cal. 1995) (same). After Plaintiff refused to pay AT&T for its services, AT&T accurately reported the account to the credit reporting agencies. In any event, upon notice of Plaintiff's dispute from the credit reporting agencies, AT&T thoroughly investigated the account and timely responded with accurate and complete information.

## C.     **AT&T Is Entitled To Judgment on Plaintiff's FCRA Claim**

Plaintiff purports to assert a claim under the FCRA but is unable to satisfy his burden of proof as to each necessary element and, accordingly, AT&T is entitled to judgment in its favor.

The FCRA imposes specific obligations on furnishers of information. As is relevant to this case, furnishers have a duty reasonably investigate credit information disputed by a consumer, but that duty arises only when a credit reporting agency notifies the furnisher of a consumer's dispute, which is usually done through an ACDV. In other words, the FCRA does not apply when a consumer lodges his or her dispute directly with the creditor reporting a debt. Once a creditor receives an ACDV, it must conduct an investigation to determine whether its credit reporting was accurate. *See* 15 U.S.C. § 1681s-2(b). Once a creditor communicates the findings of its investigation to the credit reporting agency, the creditor has no further responsibility under the FCRA. *See* 15 U.S.C. § 1681i(a). It is then up to the credit reporting agency to determine whether or not to revise the consumer's credit report, and report its determination to the consumer. *Id.*

### 1.     **Plaintiff Cannot Prove A Violation Of The FCRA**

Plaintiff alleges that AT&T reported inaccurate information, which appeared on his credit report; Plaintiff further alleges that AT&T failed to conduct a reasonable investigation following

Plaintiff's dispute to the credit reporting agencies. Plaintiff's claim fails as a matter of law for two independent reasons: AT&T's credit reporting was accurate; and, AT&T's investigation of the disputes transmitted to it by the credit reporting agencies was reasonable.

> *(a)    Summary Judgment Should be Granted in Favor of AT&T Because AT&T's Credit Reporting was Accurate.*

The FCRA provides that: "A person shall not furnish any information relating to a consumer to any consumer reporting agency if the person knows or has reasonable cause to believe that the information is inaccurate." 15 U.S.C. § 1681s-2(a).  However, a private consumer, like Plaintiff, does not have a cause of action against a furnisher[26] for an alleged violation of § 1681s-2(a).[27]  *See* 15 U.S.C. § 1681s-2(d) (barring private causes of action to enforce § 1681s-2(a)); *Burrell v. DSF Services, LLC, et al.,* 735 F. Supp. 2d 438, 445 (D.N.J. 2010) (§ 1681s-2(a) may be enforced exclusively by government agencies); *Bartley v. LVNV Funding, LLC,* No. 09-3884, 2010 WL 2629072, at *3 (D.N.J. June 28, 2010) (same); *Dimedio v. HSBC Bank,* No. 08-5521, 2009 WL 1976072 at *3 (D.N.J. 2009) (same).

Although a private consumer, like Plaintiff, may not bring a claim against AT&T based on § 1681s-2(a), an individual may bring a claim against a furnisher who violates § 1681s-2(b). 15 U.S.C. § 1681s-2(d).[28]  When a credit reporting agency does communicate a consumer's

---

[26]    While "furnisher of information" is not specifically defined by the statute, case law has defined it as an entity "which transmits information concerning a particular debt owed by a particular consumer to consumer reporting agencies."  *Carney v. Experian Info Solutions, Inc.,* 57 F.Supp.2d 496, 501 (W.D.Tenn. 1999).

[27]    "Congress limited enforcement of the duties imposed by § 1681s-2(a) to governmental bodies" because it "did not want furnishers of credit information to be exposed to suit by any and every consumer dissatisfied with the credit information furnished."  *Dimedio v. HSBC Bank,* No. 08-5521, 2009 WL 1976072 at *3 n. 2 (D.N.J. 2009) (quoting *Nelson v. Chase Manhattan Mortgage Corp.,* 282 F.3d 1057, 1060 (9th Cir. 2002)).

[28]    Although the Third Circuit has not explicitly ruled on the issue, a majority of courts hold that § 1681s-2(b) may be the basis for a private cause of action.  *See Bartley,* 2010 WL 2629072, at *3 n. 2.

27

dispute to a credit furnisher, the furnisher must investigate that dispute to determine if its credit reporting is accurate. 15 U.S.C. § 1681s-2(b).

Accordingly, a claim under section 1681s-2(b) is necessarily predicated upon some actual inaccuracy[29] in the furnisher's credit reporting. *See, e.g., Chiang v. Verizon New England, Inc.*, 595 F.3d 26, 29 (1st Cir. 2010) ("a § 1681s-2(b) claim requires plaintiff to show *actual inaccuracies* that a furnisher's objectively reasonable investigation would have been able to discover") (emphasis added). *Accord Nagle v. Direct Merchants Credit Card Bank, N.A.,* No. 05-3739, 2006 U.S. Dist. LEXIS 29835, at *8 (E.D. Pa. Mar. 23, 2006) ("In order to state a claim pursuant to § 1681s-2(b), a plaintiff should at least allege that he or she sent notice of disputed information to a consumer reporting agency, such that the defendant furnisher should have received notice from the agency and yet did not comply with the mandates to investigate and appropriately modify inaccurate or unverified information").

In *Chiang*, the plaintiff "sued his telecommunications company, Verizon New England Inc. ... [in state court] alleging in part that the company had billed his account for telephone

---

[29]     This Court recently recognized what constitutes "accuracy" is "an important question" about which "there is currently a circuit split." *Shannon v. Equifax*, 764 F. Supp. 2d 714, 721 (E.D.Pa. Jan 26, 2011). While the Third Circuit has not explicitly ruled on this issue, some courts hold that "technical accuracy" is sufficient while other courts have held that reports may be "inaccurate" if they are "misleading in such a way and to such an extent that it can be expected to adversely affect credit decisions." *Id.* at 721-22 (citing cases for both propositions). For example, in *Todd v. Associated Credit Bureau Servs., Inc.*, plaintiffs alleged that a credit reporting agency report that plaintiffs had owed $1,200 two years prior was "misleading, stale, and erroneous" because it did not mention that plaintiffs had, in fact, paid off their debt. 451 F.Supp. 447, 448 (E.D.Pa. 1977), *aff'd*, 578 F.2d 1376 (3rd Cir. 1978), *cert. denied*, 439 U.S. 1068 (1979). This Court held that the *Todd* plaintiffs could not sustain their cause of action because the report was accurate. *Id.* at 448-49.   Conversely, other cases have held that the "technical accuracy" approach is too stringent and have, instead, evaluated whether a report was "so misleading as to be inaccurate." *Evantash v. G.E. Capital Mortgage Servs., Inc., et al.*, No. 02-cv-1188, 2003 WL 22844198 (E.D.Pa. 2003) (citing *Koropoulos v. Credit Bureau, Inc.*, 734 F.2d 37 (D.D.C. 1984)). *Cf. Saunders v. Branch Banking and Trust Company of Virginia*, 526 F.3d 142, 148 (4th Cir. 2008) ("[c]ourts have held that a credit report is not accurate under [the] FCRA if it provides information in such a manner as to create a materially misleading impression"). Regardless of whether the "technical accuracy" or less-stringent "so misleading as to be inaccurate" approach is applied, AT&T's reporting in this case was accurate as a matter of law.

service he had not ordered." 595 F.3d 26, 29 (1st Cir. 2010). While Chiang's substantive billing

disputes were being resolved in the state court, he brought a federal suit against Verizon NE

alleging, *inter alia*, violations of § 1681s-2(b) of the FCRA, for its "handling of the disputes

resolved in state court." *Id.* In *Chiang*, the First Circuit, *inter alia*, held that:

> [A] § 1681s-2(b) claim requires plaintiff to show actual inaccuracies that a
> furnisher's objectively reasonable investigation would have been able to discover.
> * * *
>
> "[I]t is difficult to see how a plaintiff could prevail on a claim for damages" based
> on an unreasonable investigation of disputed data "without showing that the
> disputed information … was, in fact, inaccurate."
>
> We emphasize that…a plaintiff's required showing is *factual* inaccuracy, rather
> than the existence of disputed legal questions.

*Id.* at 29-30, 38 (quoting *DeAndrade v. Trans Union*, 523 F.3d 61, 67 (1st Cir. 2008)) (emphasis

in original).

    In the present case, there can be no question that AT&T's credit reporting with respect to

Plaintiff's account was accurate. As explained above in Section III, *supra*, the undisputed facts

establish that Plaintiff and/or his wife made a series of telephone calls in April and May of 2007,

which were routed over AT&T's network by IDT. *See* Van Veen Dep. at 43:10-45:13 and Exs.

2, 3; Plaintiff's Response to AT&T's Request for Admission Nos. 1-12; FCC-37, 41, 45-46;

Samaroo Dep. at 218:2-7; 222:13-14 and Ex. 14. As a common carrier, AT&T was obligated to

carry those calls and bill Plaintiff in accordance with the applicable federal tariff that would have

applied to him as a non-customer. 47 U.S.C. § 202(a); Van Veen Dep. Tr. at Exs. 2 and 3. *See*

*also* Samaroo Dep. at 218:2-7; 230:4-10; 230:22-231:3. *Accord* Tariff F.C.C. No. 29.

    Plaintiff originally owed AT&T $202.18 for these calls, but on December 26, 2007,

AT&T agreed to a courtesy adjustment, thereby reducing the amount due to $64.12. *See* Van

Veen Dep. 22:2-23:7, 82:1-6, 97:6-18, and Exs. 2, 3; Samaroo Dep. 214:14-23, 216:17-2:17:2,

218:8-14, and Exs. 12-14; Raso Dep. 32:8-11, 34:10-13, 78:18-80:20, and Exs. 9, 11. In other

words, AT&T adjusted the bill to reflect exactly the amount that Plaintiff would have expected to pay IDT for the calls. Plaintiff admits that he was never billed by another carrier, and that he never paid anyone for the calls. *See* Van Veen Dep. 47:11-12, 48:2-4, 49:9-21, 51:2-6, 58:17-20, 72:22-23, 84:6-9, 94:13-22, 98:11-16; Raso Dep. 279:22-24. Plaintiff simply refused to pay anyone for the telephone calls made on AT&T's network, and it was his failure to pay for those services that caused the negative credit reporting giving rise to this suit.

In accordance with applicable policies, AT&T wrote off Plaintiff's balance due in December, 2007 and, for the first time, reported the account as charged-off shortly thereafter. *See* Samaroo Dep. Tr. at 102:1-3, 102:8-103:22, 171:8-88, 171:23-172:2, and Ex. 1-4, 7; AT&T Trial Ex. 16; Jager Dep. Ex. 5; Equifax Dep. 34:16-35:16, 43:24-44:3; Experian Dep. Ex. 1. *See also* Raso Dep. Tr. at 194:18-23 and Ex. 14; Trans Union Dep. 28:16-20. *Accord* Van Veen Dep. 70:4-8, 83:19-84:9  On March 12, 2009, AT&T issued another courtesy adjustment of $64.12, leaving a zero balance on Plaintiff's account; because the underlying charges on Plaintiff's account were valid and accurately reported as charged-off, AT&T did not request that the credit reporting agencies delete the tradeline related to Plaintiff's account. Raso Dep. 93:18-21, 277:14-21, 280:1-3, 280:14-20, 287:4-6. *See also* FCC-46; Samaroo Dep. 271:13-23

On May 1, 2009, AT&T informed the three major credit reporting agencies that Plaintiff's account had a zero balance. Samaroo Dep. 291:19-292:3 and Exs. 3, 4 at pp. ATT_36 and 860; Raso Dep. Exs. 6, 7 at pp. ATT_36 and 860; Experian Dep. 35:7-9 and Ex. 3; Trans Union Dep. 41:6-11 and Ex. 3; Equifax Dep. 34:16-35:16 and Ex. 1. In response to the ACDVs transmitted by Experian, Trans Union, and Equifax, AT&T thoroughly investigated its files in light of the disputes transmitted and requested that the credit reporting agencies modify their reports to reflect the then-current information AT&T had in its file regarding Plaintiff. *Compare*

Experian Dep. Ex. 2, Trans Union Dep. Ex. 1, and Equifax Dep. Ex. 1 *with* Raso Dep. Exs. 6, 7,

11-13 *and* ATT_1-23.

In short, AT&T accurately reported information about Plaintiff's account to the credit

reporting agencies. *See, e.g.*, Samaroo Dep. 283:1-15, 285:22-286:9, 291:10-292:16, 306:17-

307:18, 308:10-17; 308:21-309:5, 309:21-310:7, 311:16-18, 313:6-8.   As such, summary

judgment should be entered in favor of AT&T.

> (b)   *AT&T Cannot Be Held Liable For Failing to Report Plaintiff's Account as "Disputed."*

Plaintiff argues that AT&T had an obligation to report his account as "disputed" to the

credit reporting agencies.   Docket Entry 100 at 2.   In reality, AT&T was under no such

obligation, and, in any event, Plaintiff cannot maintain a cause of action on that basis.   As

explained above, § 1681s-2(a) imposes a duty on furnishers of information to provide accurate

information to the credit reporting agencies. § 1681s-2(a) provides, *inter alia*, that:

> If the completeness or accuracy of any information furnished by any person to
> any consumer reporting agency is disputed to such person by a consumer, the
> person may not furnish the information to any consumer reporting agency without
> notice that such information is disputed by the consumer.

15 U.S.C. § 1681s-2(a)(3).   Importantly, this duty to provide notice of consumer disputes arises

only under § 1681s-2(a).   However, as explained at length in Section IV(C)(1)(a), *supra*, Plaintiff

*cannot* bring a claim against AT&T based on an alleged violation of § 1681s-2(a).   To the

contrary, a private consumer may only bring a cause of action for alleged violation of § 1681s-

2(b), which imposes no similar duty upon furnishers to report consumer disputes. *See, e.g.*,

*Krajewski v. American Honda Finance Corp.*, 557 F.Supp.2d 596, 609 n.9 (E.D. Pa. 2008)

("Section 1681s-2(b)—the only provision that provides a private right of action against

furnishers of information—deals solely with the furnisher's duty to investigate alleged

inaccuracies and correct them where they are found by the furnisher to be incorrect. Liability

31

pursuant to this provision occurs as a result of an unreasonable investigation, not simply as a result of inaccurate information being reported. ... If [the defendant's] investigation was reasonable, it will not be liable pursuant to § 1681s-2(b)").

Plaintiff has cited *Saunders v. Banking and Trust Co. of Virginia*, 526 F.3d 142 (4th Cir. 2008) to support of his contention that AT&T knowingly violated the FCRA by failing to report his account as "disputed." Docket Entry 100 at 2. Plaintiff's reliance on *Saunders* is misplaced because *Saunders* was incorrectly decided and is distinguishable in any event.

In *Saunders*, defendant BB&T demanded payment for late fees and penalties incurred after it had neglected to bill Saunders, the customer-plaintiff. 526 F.3d at 145-46. In responding to a subsequent credit dispute, BB&T did not acknowledge Saunders contested the debt, and— even as the case went to trial—BB&T had not changed or updated its credit reporting to reflect Saunders' ongoing dispute regarding the legitimacy of the debt. *Id.* at 146-47. The *Saunders* court determined that a reasonable jury could conclude that BB&T had violated the FCRA by failing to acknowledge the contested nature of the debt when responding to the credit reporting agency's notice of dispute. *Id.* at 147. To support its holding, the *Saunders* court noted that § 1681s-2(a)(3) imposes a duty to report consumer disputes and reasoned that § 1681s-2(a)(3) informs the scope of furnishers' duty to investigate under § 1681s-2(b). 526 F.3d at 149.

AT&T respectfully submits that *Saunders* was wrongly decided. The explicit language of 15 U.S.C. § 1681s-2(b)—the only section of the FCRA which provides a private right of action—imposes no duty upon furnishers to report consumer disputes. To the contrary, that duty arises only under § 1681s-2(a), the enforcement of which Congress left exclusively with governmental entities. *See* 15 U.S.C. § 1681s-2(d). Indeed, *Saunders*' analysis blurs the well-established line between § 1681s-2(a) and § 1681s-2(b), thereby upsetting the statutory scheme

put into place by Congress when it specifically withheld enforcement of § 1681s-2(a) from

private consumers like Plaintiff. *See Scheel-Baggs v. Bank of America*, 575 F. Supp. 2d 1031,

1039 (W.D. Wis. 2008) ("once a disputed piece of information has been verified by an

investigation, § 1681s-2(b) imposes no further obligation. Thus, the question [of] whether [a]

defendant...was required to report the dispute is subsumed within the question of whether it

conducted a reasonable investigation"); *In re Benson*, 445 B.R. 445, 449 (Bankr. E.D. Pa. 2010)

("Plaintiff's premise is that a disputation of a debt after such debt is reported by a consumer

reporting agency creates a duty on the entity that informed or furnished such information to the

agency to update the credit report to reflect that such debt is disputed. This is incorrect; this

theory conflates the duties of a 'furnisher' under the FCRA with those of a 'debt collector' under

the [Fair Debt Collection Practices Act]").

Notwithstanding the foregoing, *Saunders* is distinguishable from the case at bar in any

event. In *Saunders*, defendant BB&T admitted that it had failed to properly record plaintiff's

loan for a vehicle in its records. 526 F.3d at 146. Saunders contacted BB&T several times to

notify it of his loan obligation, but BB&T repeatedly told Saunders that he owed them no money.

*Id.* Saunders could not make any payments to BB&T on his car loan because he had never been

given an account number or payment book. *Id.* When BB&T finally did record the loan, it sent

Saunders a notice stating that he was "seriously delinquent" and demanding full payment on the

loan's principal, plus interest, late fees, and "other applicable charges." *Id.* at 145. Saunders

agreed to make payments on the loan, but refused to pay any penalties or late fees. *Id.* at 146.

BB&T subsequently repossessed the car and reported Saunders' loan to the credit reporting

agencies as "in repossession status" without noting that Saunders contested the debt. *Id.* In

response to an ACDV, BB&T modified its reporting to reflect that Saunders' loan had been

charged-off. *Id.* Even as the case went to trial, BB&T had not remedied the problem; the *Saunders* court found that a reasonable jury could conclude that BB&T had willfully violated the FCRA by reporting Saunders' debt without reporting his dispute regarding its legitimacy. *Id.* at 147. Importantly, the *Saunders* court assumed, without deciding, that a "furnisher incurs liability under § 1681s-2(b) only if it fails to report a ***meritorious dispute***." *Id.* at 151 (emphasis added). The Ninth Circuit Court of Appeals likewise cautioned that:

> a furnisher does not report "incomplete or inaccurate" information within the meaning of § 1681s-2(b) simply by failing to report a meritless dispute, because reporting an actual debt without noting that it is disputed is unlikely to be materially misleading. It is the failure to report a bona fide dispute, a dispute that could materially alter how the reported debt is understood, that gives rise to a furnisher's liability under § 1681s-2(b).

*Gorman v. Wolopff & Abramson, LLP, et al.*, 584 F.3d 1147, 1163 (9th Cir. 2009).

In this case, unlike *Saunders*, Plaintiff's debt was valid; as such, any dispute regarding its validity could not have been meritorious and AT&T's alleged failure to report same would not have been materially misleading.[30] Indeed, the undisputed material facts establish that Plaintiff had no valid excuse for his refusal to pay the legitimate $64.12 balance he owed AT&T as a result of calls he admits making, which were routed over AT&T's network by IDT (and which AT&T was obligated to carry and bill Plaintiff for). In sum, in AT&T's reporting regarding

---

[30] As explained above, Plaintiff complained to AT&T, MCI, IDT, GC Services Limited Partnership, the FCC, the Pennsylvania Attorney General, and the Pennsylvania Utilities Commission between 2007 and early 2009 regarding the balance he owed AT&T. None of these entities ever made a finding of wrongdoing or liability against AT&T vis-à-vis Plaintiff. *See* Van Veen Dep. 77:2-78:15 and Exs. 9-11, 13, 14; *In the Matter of AT&T, Inc.*, 24 F.C.R.R. 11215, 11216, 2009 WL 2751126 at *2 (F.C.C. Aug. 27, 2009). *See also* Samaroo Dep. Ex. 14. Moreover, AT&T's Executive Appeals department thoroughly investigated Plaintiff's account, found that there was no fault or problem on AT&T's part, determined that Plaintiff was not billed in error, and sustained the charges Plaintiff had incurred. AT&T noted its internal databases and notified Plaintiff regarding the result of this investigation. If the Executive Appeals department's investigation had found that Plaintiff's complaint were valid, AT&T would have adjusted the charges accordingly, retrieved the account from collections, and requested that the credit reporting agencies delete any negative tradeline. Samaroo Dep. 237:15-18 and Ex. 14; Van Veen Dep. 103:18-104:5, 105:2-4, and Ex. 13; Raso Dep. 182:12-183:21 and Ex. 7.

Plaintiff's account was neither incorrect nor materially misleading.[31]  Because Plaintiff had no meritorious basis upon which to dispute the $64.12 balance he owed AT&T, AT&T was under no obligation to report Plaintiff's debt as "disputed" to the credit reporting agencies. Accordingly, AT&T is entitled to judgment as a matter of law with regard to Plaintiff's claim.

> (c)   *Alternatively, Even if AT&T's Reporting was Inaccurate, Summary Judgment Should be Granted in Favor of AT&T as it Conducted a Reasonable Investigation When Informed of Plaintiff's Dispute.*

As explained above, Plaintiff may only bring suit against AT&T for alleged violation of 15 U.S.C. § 1681s-2(b),[32] which obligates furnishers to perform a reasonable investigation to verify the sufficiency and accuracy of the information reported when notified by a credit reporting agency of a consumer dispute.  To prevail on a claim under 15 U.S.C. § 1681s-2(b), Plaintiff must prove that:

(1) Plaintiff disputed reported information with a credit reporting agency;

(2) AT&T received a notice of the dispute under Section 1681i(a) from the credit reporting agency;

(3) AT&T failed to perform a reasonable investigation upon receiving the notice of dispute;

(4) the failure to investigate was willful or negligent; and

(5) Plaintiff was harmed.

---

[31]      Indeed, Plaintiff could have—but did not—submit a consumer statement to the credit reporting agencies that would have accompanied his credit report and explained, in Plaintiff's own words, his position regarding the underlying validity of the debt he owed AT&T.  *See* Trans Union Dep. 39:24-40:19 and Exs. 1-3; Equifax Dep. 37:10-39:2, 45:11-23 and Exs. 1-3; Experian Dep. 32:3-18, and Exs. 1-3.

[32]      Count I of Plaintiff's Second Complaint actually alleges that AT&T "violated sections 1681n and 1681o of the FCRA."  The only affirmative cause of action provided for in these subsections (titled "Civil liability for willful noncompliance" and "Civil liability for negligent noncompliance"), however, relates to obtaining a consumer report from a consumer reporting agency under false pretenses, 15 U.S.C. § 1621n(c).  Otherwise, 15 U.S.C. §§ 1621n and 1621o set forth a measure of damages under Subchapter III of the Title 15, Chapter 41 and provides a fee-shifting provision upon "a finding by the court that an unsuccessful pleading... or other paper filed under this section was filed in bad faith or for the purposes of harassment."  Assuming, *aruguendo*, that Plaintiff intends to proceed under 15 U.S.C. § 1681s-2, Plaintiff's claim still must be dismissed as a matter of law.

*See, e.g., Bartley*, 2010 WL 2629072 at \*3; *Jaramillo v. Experian Information Solutions, Inc.*, 155 F.Supp.2d 356, 363 (E.D. Pa. 2001); *Young v. Equifax Credit Information Services, Inc.*, 294 F.3d 631, 640 (5th Cir. 2002). In other words, a credit furnisher only violates the FCRA when, *after a credit reporting agency communicates a consumer's dispute to the credit furnisher*,[33] it fails to conduct a "reasonable investigation" of its records to determine whether the disputed information can be verified. *See, e.g., Krajewski*, 557 F.Supp.2d at 609 n.9 ("Liability pursuant to this provision occurs as a result of an unreasonable investigation, not simply as a result of inaccurate information being reported. ... If [the defendant's] investigation was reasonable, it will not be liable pursuant to § 1681s-2(b)"); *Farren v. RJM Acquisition Funding LLC*, No. 04-995, 2005 WL 1799413, at \*4 (E.D. Pa. July 26, 2005).

Under section 1681s-2(b), a furnisher who receives notice from a consumer reporting agency that a consumer formally disputes (in accordance with § 1681i(a)(2)) the accuracy of any information provided by the furnisher to the consumer reporting agency must:

(1) conduct an investigation with respect to the disputed information;

(2) review all relevant information provided by the consumer reporting agency to the furnisher regarding the dispute;

(3) report the results of the investigation to the consumer reporting agency; and

(4) report any findings of inaccuracy to all other consumer reporting agencies to which the information was furnished.

15 U.S.C. § 1681(s)-2(b). *See, e.g., Farren*, 2005 WL 1799413, at \*4.

---

[33]     Although a furnisher of information has a duty to investigate the accuracy of its credit reporting, it has no duty to perform this investigation unless a consumer reporting agency, not a consumer, first informs it that the accuracy of the information is disputed. 15 U.S.C. § 1681(s)-2(b). *See, e.g., Beisel v. ABN Ambro Mortg., Inc.*, No. 07-2219, 2007 WL 2332494, at \*1-2 (E.D. Pa. Aug. 10, 2007); *Kaetz v. Chase Manhattan Bank, USA*, No. 05-1546, 2006 WL 1343700, at \*3 (M.D. Pa. May 17, 2006) (holding that furnisher of information has no duty under FCRA to investigate information's accuracy until credit agency, not consumer, reports that accuracy is disputed); *Jaramillo v. Experian Information Solutions, Inc.*, 155 F. Supp.2d 356, 363 (E.D. Pa. 2001) (same); *Millet v. Ford Motor Credit Co.*, No. 04-2450, 2006 WL 1301160, at \*3 (D.Kan. May 9, 2006) (listing cases that reached this conclusion).

The FCRA itself is silent as to the precise duty of care required in performing the

furnisher's investigation. *See, e.g., Evantash v. G.E. Capital Mortg. Servs., Inc., et al.,* No. 02-

cv-1188, 2003 WL 22844198 at *6 (E.D.Pa. 2003)); *Akalwadi v. Risk Mgmt. Alternatives, Inc.,*

336 F.Supp.2d 492, 510 (D. Md. 2004). Nonetheless, the term "investigation" is

> apparently intended to give the furnisher some flexibility. We know that the
> investigation is meant to determine if the disputed information is "incomplete or
> inaccurate." Mere incompleteness, however, is not enough; the incompleteness
> must be such as to make the furnished information misleading in a material sense.

*Chiang,* 595 F.3d at 36-37. Indeed, numerous courts have concluded that the FCRA requires

creditors faced with a consumer dispute to conduct a "reasonable investigation" of their records

to determine whether the disputed information can be verified. *See, e.g., id.*; *Johnson v. MBNA*

*America Bank,* 357 F.3d 426, 431 (4th Cir. 2004); *Farren,* 2005 WL 1799413, at *4; *See also*

*Gorman,* 584 F.3d at 1157 (furnisher's investigation "may not be unreasonable").

While questions of reasonableness might in some circumstances present a fact question,[34]

"summary judgment is proper if the reasonableness of the defendant's procedures is beyond

question." *Westra v. Credit Controls of Pinellas,* 409 F.3d 825, 827 (7th Cir. 2005), (citing

*Crabill v. Trans Union, L.L.C.,* 259 F.3d 662, 664 (7th Cir. 2001) and finding investigation

reasonable when furnisher checked identification information upon plaintiff's report that account

did not belong to plaintiff). *See also Chiang,* 595 F.3d at 38 (summary judgment appropriate

where plaintiff failed to raise a genuine issue of material fact that the investigation was

unreasonable); *Gorman,* 584 F.3d at 1161 ("although 'reasonableness' is generally a question for

a finder of fact, summary judgment in this case was appropriate"); *Cope v. MBNA America Bank,*

---

[34]    In determining whether a furnisher's investigation is reasonable, a fact-finder should weigh "the
cost of verifying the accuracy of the information versus the possible harm of reporting inaccurate
information." *Johnson v. MBNA America Bank,* 357 F.3d 426, 432 (4th Cir. 2004). *See also Bruce v.
First Trust U.S.A. Bank, N.A.,* 103 F. Supp. 2d 1135, 1145 (E.D. Miss. 2002).

*N.A.*, No. 04-cv-493, 2006 WL 655742 (D. Or. 2006) (concluding that it was "beyond question" that furnisher defendant conducted a reasonable investigation under § 1681s-2(b)); *Robinson v. Equifax Information Systems*, No. 04-cv-0229, 2005 WL 1712479 (S.D.Ala. 2005) (finding furnisher's investigation reasonable as a matter of law); *Schmidt v. Trans Union, LLC, et al.*, No. 03-C-1643, 2004 WL 785098 (N.D.Ill. 2004) ("in [these] circumstances, [a] reasonable investigation extended no further than an internal review"); *Malm v. Household Bank (SB), N.A.*, No. Civ. 03-4340, 2004 WL 1559370 (D. Minn. 2004) (finding furnisher's "investigation under § 1681s-2(b) was reasonable given the cursory notice it received concerning Plaintiff's dispute"); *Accord Farren*, 2005 WL 1799413, at *4 (finding creditor's investigation procedures reasonable as a matter of law).

The reasonableness of an investigation is to be determined by an objective standard, and the burden of showing the investigation was unreasonable is on the Plaintiff. *Chiang*, 595 F.3d at 37 (citing *Gorman*, 584 F.3d at 1156-57; *Westra*, 409 F.3d at 827; *Johnson*, 357 F.3d at 429-31). Moreover, Plaintiff must demonstrate some causal relationship between the allegedly unreasonable investigation and the alleged failure to discover inaccuracies in his account. *Id.* As the First Circuit recently explained, because a consumer reporting agency's notice informs a furnisher of the nature of a consumer's dispute,

> what is a reasonable investigation by a furnisher may vary depending on the circumstances. For instance, a more limited investigation may be appropriate when CRAs provide the furnisher with vague or cursory information about a consumer's dispute. . . . Accordingly, the central inquiry when assessing a consumer's claim under § 1681s-2(b) is "whether the furnisher's procedures were reasonable in light of what it learned about the nature of the dispute from the description in the CRA's notice of dispute."

*Id.* at 38 (quoting *Gorman*, 584 F.3d at 1157). *See also Krajewski*, 557 F.Supp. 2d at 610 (whether a furnisher's investigation is reasonable "depends in large part on the allegations made

by the consumer and the notice of the allegations provided to the furnisher by the consumer reporting agency").

Importantly, section 1681(s)-2(b) "does not require . . . any data furnisher to take extraordinary means to investigate and *discover* disputed information but rather calls for a more passive investigation where the data furnisher is determining only that the information provided to it matches the information in its records." *Farren*, 2005 WL 1799413, at *7 (emphasis in original). For instance, a furnisher does not need to contact a consumer directly about a dispute reported to the furnisher by a credit reporting agency or go beyond a verification of the relevant information provided. *See id.*; *Chiang*, 595 F.3d at 36 (citing *Westra*, 409 F.3d at 827 for the proposition that "requiring a furnisher to automatically contact every consumer who disputes a debt would be terribly inefficient and such action is not mandated by the FCRA").

Here, the undisputed material facts unequivocally demonstrate that Plaintiff cannot satisfy his burden of proving that AT&T failed to reasonably investigate his dispute. To the contrary, AT&T's investigations in response to ACDVs regarding Plaintiff were diligent. In April and August, 2009, AT&T received three notice from the credit reporting agencies regarding a dispute related to Plaintiff's account. *See* Experian Dep. Ex. 2; Trans Union Dep. Ex. 1; Equifax Dep. Ex. 1. *Accord* Van Veen Dep. 151:18-152:15. In investigating and timely responding to those disputes, the ACDV analysts followed established work standards, guidelines, manuals, policies, and procedures set forth by AT&T in order to determine whether the information on file with the credit reporting agencies was accurate. *See, e.g.,* Jager Dep. 13:25-14:8, 21:17-18, 26:14-27:18, 36:9-12, 42:20-43:9.

In each instance, the ACDV analyst logged on to e-OSCAR to review the ACDV and ascertain precisely what the credit reporting agency's records showed AT&T had previously

reported with respect to Plaintiff's account. Raso Dep. 201:4-12; ATT_0874-882; Page Dep. 33:3-8 and Ex. 2. The ACDV analyst then reviewed AT&T's own databases, including RCAM, CACS, and DPS and compared the previously-reported information listed on each ACDV against the then-current account information in AT&T's own records; AT&T's records would have included information regarding, *inter alia*, Plaintiff's contact information, the last four digits of his Social Security number, balance dates and amounts, bill dates and amounts, payment history, account status, and notes about the account. *See, e.g.,* Raso Dep. 75:11-76:4, 137:13-138:3, 150:17-22, 156:22-157:4, 266:8-19 and Exs. 6, 7, 11-13; Jager Dep. 13:25-14:8, 27:7-15, 32:19-33:16, 34:1-12, and Exs. 5, 7; Samaroo Dep. 283:12-15; 306:24-307:18, 309:3-4, 310:1-7, 310:22-311:5, 312:4-15; Page Dep. 32:1-43:23, 57:18-60:10, and Ex. 2. *Compare* Experian Dep. Ex. 2, Trans Union Dep. Ex. 1, and Equifax Dep. Ex. 1.

> i.    AT&T Reasonably Investigated the Dispute Transmitted by Experian

On April 1, 2009, Experian transmitted an ACDV that described Plaintiff's dispute as "Claims inaccurate information. Did not provide specific dispute. Provide complete ID and verify account information. ATANDT PROVIDED A STATEMENT TO ME THAT SAID I OWED NOTHING TO THEM." Experian Dep. 19:20-25, 30:1-6 and Ex. 2.

In timely responding to the dispute transmitted by Experian, an ACDV analyst accessed AT&T's databases in order to compare the information on file with Experian against the information in AT&T's records. *See* Raso Dep. 75:11-76:4, 137:13-138:3, 150:17-22, 156:22-157:4, 201:4-12, 109:13-111:17; 137:13-138:22; 150:17-22, 156:22-160:22, 162:9-24, 266:5-19, and Exs. 6, 7, 11-13, 16; Jager Dep. 13:25-14:8, 27:7-15; Samaroo Dep. 283:12-15; 306:24-307:7, 310:22-312:15, 313:6-8. *See also* Page Dep. 32:1-43:23, 57:18-60:10, and Ex. 2. *Accord* Experian Dep. 20:8-9; 24:2-22, 26:6-9, and Ex. 2.

Based on her review of AT&T's databases, the ACDV analyst was able to confirm that the disputed account belonged to Plaintiff and that he had owed AT&T the disputed balance. *Id.* The analyst further requested that Experian update the information it had on file relating to Plaintiff's account show the following information:

| Name: | DENNIS **VANVEEN** | | | |
|---|---|---|---|---|
| Current Address: | 1328 JEANETTE WAY SOUTHAMPTON, PA | | Acct Status/Rating: | <u>97</u> |
| Zip: | 18966 | | Account Condition / Cumm Status: | CHARGE OFF |
| Account No. | 711090833401 | | Charge Off Amt: | 64 |
| Balance: | 64 | | Type: | 4D |
| Balance Date: | 12/24/2007 | | Terms: | 001 |
| Amt Past Due: | 64 | | Date Last Pay: | |
| Orig Delinq Date: | 07/18/2007 | | Open Date: | 05/07/2007 |
| High Credit Balance: | 64 | | Closed Date: | 08/29/2007 |

Experian Dep. 22:11-15, 31:1-9, 34:1-7, and Ex. 2. The information provided by AT&T in response to the Experian ACDV was accurate and reflected the information AT&T had in its records regarding Plaintiff as of April 29, 2009 when AT&T's ACDV response was submitted to Experian. Raso Dep. 111:14-17, 137:13-138:22; 150:17-22, 156:22-160:22, 162:9-24, 266:5-19, and Exs. 6, 7, 11-13; Jager Dep. 27:7-15; Samaroo Dep. 279:4-12, 283:1-15; 285:22-286:9, 310:22-312:15, 313:6-8. *See also* Page Dep. 32:1-43:23. *Accord* Raso Dep. 201:4-12 and Ex. 16; Experian Dep. 20:9, 24:2-22, 26:6-9; Van Veen 30-31.

In analyzing investigations conducted in response to similar notices of dispute, this Court has upheld the reasonableness of furnisher's investigations as a matter of law. *See, e.g. Krajewski*, 557 F. Supp. 2d at 609-610. In *Krajewski*, defendant American Honda received an ACDV requesting it "verify all account information." *Id.* at 610. In response, American Honda's personnel "reviewed the ACDV, compared the ACDV to its records relating to plaintiff's account, verified the accuracy of its reporting, and provided its results to [the credit reporting agency.]" *Id.* (internal ellipses and brackets omitted). The Court granted American

41

Honda's motion for summary judgment regarding its investigation of this dispute, explaining that American Honda had "fulfill[ed] its obligation under the FCRA" by comparing the information in its records against the information on the credit reporting agency's file and confirming that all of the information was "accurate as of the date reported." *Id.* at 610, 620. *Accord Farren*, 2005 WL 1799413 at *5-7 (E.D.Pa. July 26, 2005) ("The statute does not require...any data furnisher to take extraordinary means to investigate and discover disputed information but rather calls for a more passive investigation where the data furnisher is determining only that the information provided matches the information in its record. The Court will not impose duties upon a data furnisher that Congress did not see fit to impose"). As in *Krajewski*, AT&T's investigation into the dispute transmitted by Experian in this case was reasonable as a matter of law.

<div align="center">

ii.  AT&T Reasonably Investigated the Dispute Transmitted by
Trans Union

</div>

On April 24, 2009 Trans Union ACDV described Plaintiff's dispute as "Disp Curr Bal-Verify Orig Loan Amt, Schld Monthly Pymt Amt, Actl Pymt Amt, Amt Past Due, Curr Bal, and Orig Chargoff Amt  Claims company will change. Verify all account information" and "Unable to authenticate documentation dated 03/16/2009." Trans Union Dep. 37:6-38:6 and Ex. 1.

In timely responding to the dispute transmitted by Trans Union, an ACDV analyst accessed AT&T's databases in order to compare the information on file with Trans Union against the information in AT&T's records.   Raso Dep. 266:8-19; Jager Dep. 13:25-14:8; Samaroo Dep. 283:12-15; 306:24-307:7, 309:3-4, 310:1-7, 310:22-311:5, 312:4-15, and Ex. 17. *See also* Page Dep. 32:1-43:23 and Ex. 2.  *See also* Raso Dep. 201:4-12; ATT_0874-0882; Page Dep. 32:1-43:23 and Ex. 2; Trans Union Dep. 15:4-11, 22:13-23:2, 42:14-43:11 and Ex. 1. *Accord* Page Dep. 31:10-13; 57:18-60:10; Raso Dep. 75:11-76:4, 137:13-138:3, 150:17-22, 156:22-157:4.

<div align="center">

42

</div>

Based on her review of AT&T's databases, the ACDV analyst was able to confirm that AT&T had not agreed to delete the tradeline regarding Plaintiff's account, and was able to verify all of Plaintiff's account information, including his original and current balance, payment history, amount past due and charged-off. *Id.* The analyst requested that Trans Union update the information it had on file relating to Plaintiff's account show the following information:

| Name: | VANVEEN, DENNIS GERARD | | Past Due: | $0 |
|---|---|---|---|---|
| Current Address: | 1328 JEANETTE WAY SOUTHAMPTON, PA | | Dt 1st Del: | 07/07 |
| Zip: | 18966 | | High Credit: | $64 |
| Phone: | 215-322-4459 | | Last Pymt: | |
| Account Number: | 711090833401 | | Acct Status: | 97 |
| Loan Type: | TELECOMMUNICATIO | | Sp. Comments / Status / Remarks | PRL – PROFIT AND LOSS WRITEOF |
| Bal Owing: | $0 | | Opened: | 05/07 |
| Ver'd: | 12/07 | | Closed: | 01/08 |

Trans Union Dep. 15:7-15, 42:14-43:11, and Exs. 1, 2. The information provided by AT&T in response to the Trans Union ACDV was accurate and reflected the information AT&T had in its records regarding Plaintiff as of May 1, 2009 when AT&T's ACDV response was submitted to Trans Union. Page Dep. 31:10-13; Samaroo Dep. 291:10-292:16; 310:22-312:15, 313:6-8; Raso Dep. 117:2-17; 137:13-138:22; 150:17-22, 156:22-160:22, 162:9-24, 266:5-19, and Exs. 6, 7, 11-14; Jager Dep. 32:19-33:16.

In *Gorman*, the Ninth Circuit upheld the reasonableness of a furnisher's investigation in response to a similar dispute transmitted by Trans Union. 584 F.3d at 1157-58. In *Gorman*, defendant MBNA received a notice of dispute that provided the following information regarding the plaintiff's account: "Claims company will change. Verify all account information." *Id.* at 1157. In response, MBNA "reviewed the account notes to determine whether [it] had agreed to delete any charges or modify the account information in any way" but concluded that "no such commitment had been made" and, upon further review of the account information provided by

43

Trans Union, submitted updates regarding the plaintiff's address, date of birth, and account

delinquency information. *Id.* at 1157-58. The Ninth Circuit upheld summary judgment in favor

of MBNA with regard to this investigation, explaining that:

> [A] jury could not find MBNA's response unreasonable. MBNA reasonably read
> the vague notice as indicating that [it] had previously agreed to change certain
> account information. MBNA's review of its internal account files to determine
> whether any such agreement had been reached was all that was required to
> respond to this notice of dispute. ... MBNA could not have reasonably been
> expected to undertake a more thorough investigation ... based on the scant
> information contained in this notice.

*Id.* at 1158. As in *Gorman*, AT&T's investigation into the dispute transmitted by Trans Union in

this case was reasonable as a matter of law.

### iii.   AT&T Reasonably Investigated the Dispute Transmitted by Equifax

The August 17, 2009 Equifax ACDV described Plaintiff's dispute as "CLAIMS TRUE

IDENTITY   FRAUD   –   ACCOUNT   FRAUDULENTLY   OPENED   INITIATE

INVESTIGATION." Equifax Dep. 30:10-16 and Ex. 1.

In timely responding to the dispute transmitted by Equifax, an ACDV analyst accessed

AT&T's databases in order to compare the information on file with Equifax against the

information in AT&T's records. Raso Dep. 75:11-76:4, 119:10-12, 122:22-123:15, 137:13-

138:22; 150:17-22, 156:22-160:22, 162:9-24, 201:4-12, 266:8-19, and Exs. 6, 7, 11-13, 15-19;

Samaroo Dep. 283:12-15; 306:24-307:7, 309:3-4, 310:1-7, 310:22-312:15, 313:6-8; Jager Dep.

13:25-14:8, 34:1-12 and Exs. 5-9. *See also* Page Dep. 32:1-43:23, 57:18-60:10, and Ex. 2.

*Accord* Samaroo Dep. Ex. 1; Raso Dep. Ex. 14; Equifax Dep. 12:8-10, 16:8-16, 17:1-23, 18:17-

22, 16:8-16, 21:6-13, 33:17-19, and Ex. 1.

As of August 17, 2009, Plaintiff's account was showing a $10.32 balance; as explained

above, this was the result of AT&T's zeroing-out Plaintiff's then-closed account, which caused

AT&T's internal system to register the account as reinstated, thereby triggering a monthly recurring charge (with its applicable taxes and fees). *See* ATT_20-22; Raso Dep. 265: 2-12 and Exs. 6, 7, 11-14; ATT_021 to 023, 35, 857, 858. *Accord* Samaroo Dep. 296:22-297:17.

Accordingly, based on her review of AT&T's databases, the ACDV analyst was able to determine that the disputed account did belong to Plaintiff and was not a result of fraud. *Id.* The analyst further requested that Equifax update the information it had on file relating to Plaintiff's account show the following information:

| Name: | VANVEEN DENNIS | | | |
|---|---|---|---|---|
| Address: | 1328 JEANETTE WAY, SOUTHAMPTON, PA 18966-**3312** | | Original Charge-Off: | **$64** |
| Phone: | 215-322-4459 | | Date 1st Del: | 07/2007 |
| Account Number: | 711090833401 | | Last Payment Date: | |
| Account Type: | 4D | | Date Closed: | **08/2007** |
| Date Open: | 05/2007 | | Date of Account Info: | **12/2007** |
| Current Balance: | **$10** | | Account Status: | [97] Unpaid balance reported as a loss by credit grantor (charge-off) |
| Past Due: | $0 | | Payment Rating: | [L] Charge-Off |

Equifax Dep. 11:24-12:10, 15:9-10, 16:17-22, 18:23-20:22, 31:11-32:1, 32:3-20, and Ex. 1; Raso Dep. 119:10-12, 122:22-123:15, 137:13-138:22; 150:17-22, 156:22-160:22, 162:9-24 and Exs. 6, 7, 11-13; Samaroo Dep. 310:22-312:15, 313:6-8; Jager Dep. 34:1-12. The information provided by AT&T in response to the Equifax ACDV was accurate and reflected the information AT&T had in its regarding Plaintiff as of August 17, 2009 when AT&T's ACDV response was submitted to Equifax. *Id. See also* Raso Dep. 122:22-123:15 and Ex. 6, 7, 11, -14. Samaroo Dep. 306:17-307:18, 308:10-17; 308:21-309:5; 309:21-310:7, 311:16-18.

In *Scheel-Baggs v. Bank of America*, the plaintiff maintained that she was not responsible for an account purportedly assigned to her ex-husband who had discharged it in a bankruptcy proceeding. 575 F. Supp. 2d at 1034-36. Over the course of several months, defendant FIA

received several notices of dispute regarding plaintiff's account. *Id.* at 1036. One notice summarized the dispute as "Not liable for Acct. (i.e. Ex-Spouse business). If Liable, Provide Complete ID and ECOA Code." *Id.* at 1036. In another, the credit reporting agency summarized plaintiff's dispute as "Not his/hers. Provide complete ID." *Id.* A third notice of dispute summarized plaintiff's dispute as "Claims inaccurate information. Provide or confirm complete ID and verify account information." *Id.* at 1037. In each instance, FIA compared the plaintiff's name, address, social security number, and account information against the information on file with the credit reporting agency and verified or modified information where appropriate. *Id.* at 1036-37. FIA did not attempt to locate a copy of the plaintiff's account application, even though it had a system that sometimes stored such information. *Id.* at 1036. Nonetheless, the *Scheel-Baggs* court explained that FIA's failure to look for a copy of the application adding plaintiff to the account did not render its investigation unreasonable. *Id.* at 1040.[35]

As in *Scheel-Baggs*, AT&T's investigation into the dispute transmitted by Equifax in this case was reasonable as a matter of law. *See also* Equifax Dep. 30:22-31:2 ("we're going to be looking for what AT&T has on their records. So if AT&T has anything that differs from what we have sent over, we would be looking for AT&T to provide that information to us"); *id.* at 26:16-19 ("Equifax [] informed Mr. Van Veen that AT&T [had] indicated that the account [did], in fact, belong to him").

In sum, AT&T thoroughly investigated and timely responded to the dispute information conveyed by each of these the credit reporting agency's ACDVs. In so doing, the ACDV

---

[35]     Eventually, a binding arbitration decision found that FIA could not collect against the plaintiff, but FIA continued to report that plaintiff owed the debt. *Id.* at 1040. The *Schell-Baggs* court allowed plaintiff's claim to proceed on the question of whether FIA "should have known [of the arbitration decision] by conducting a reasonable investigation." *Id.*

analysts followed established procedures to determine whether the information on file with the credit reporting agencies was accurate. Accordingly, there remains no genuine issue of material fact as to the reasonableness of AT&T's investigation of Plaintiff's disputes, and AT&T is entitled to judgment as a matter of law.

### 2. Alternatively, Summary Judgment Should Be Granted Because Plaintiff Cannot Prove He Was Damaged.

Plaintiff seeks an award of punitive damages as well as damages for "emotional distress," "embarrass[ment]" and "humiliat[ion]." Docket Entry 89 at 4-5. Plaintiff also seeks to recover amounts he spent on postage to mail his dispute letters to each of the credit reporting agencies, and for alleged damages related to his inability to obtain a home equity loan from NFCU at its preferred interest rates on December 1, 2008. *Id.*; Van Veen Dep. 148:2-149:11. As a matter of law, Plaintiff is not entitled to any of the foregoing damages, even if AT&T's credit reporting was inaccurate or it had failed to conduct a reasonable investigation.[36]

#### (a) Plaintiff Has Not Suffered Any Damages That Warrant Compensation By AT&T.

Even if Plaintiff's FCRA claim against AT&T were viable—which it is not—Plaintiff cannot show that AT&T caused his alleged damages because Plaintiff's alleged damages relate to events that transpired prior to AT&T receiving notice of Plaintiff's dispute from a credit reporting agency. As noted above, Plaintiff does *not* have the right to bring a cause of action for AT&T's alleged inaccurate reporting. Rather, Plaintiff can only bring a cause of action relating

---

[36]     Statutory damages of "not less than $100 and not more than $1,000" are available to a plaintiff who can prove a defendant "willfully" failed to comply with the FCRA. 15 U.S.C. § 1681n(a)(1)(A). A "willful" violation may also trigger an award of punitive damages. 15 U.S.C. § 1681n(a)(2). Only "actual damages" are available to a plaintiff who proves that a defendant has "negligent[ly]" violated the FCRA. 15 U.S.C. § 1681o(a)(1). *Gagliardi v. Equifax Information Services*, No. 09-1612, 2011 WL 337331 at *12 n.14 (W.D.Pa. Feb. 3, 2011).

to AT&T's alleged failure to conduct a reasonable investigation of his dispute. *See* 15 U.S.C. § 1681(s)-2(b).

Consequently, Plaintiff can only recover for those damages which AT&T's allegedly unreasonable investigation was a "substantial factor" in causing. *See*, e.g., *Philbin v. Trans Union Corp.*, 101 F.3d 957, 968 (3rd Cir. 1996); *Alves v. Verizon, et al.,* No. 08-3196, 2010 WL 2989988, at *6 (D.N.J. July 27, 2010). *See also Gagliardi v. Equifax Information Services*, No. 09-1612, 2011 WL 337331 at *12 (W.D.Pa. Feb. 3, 2011) ("A plaintiff cannot obtain an award of 'actual damages' under the FCRA without establishing a causal relationship between a statutory violation and the harm for which redress is sought"). *Accord Crabill*, 259 F.3d at 664 ("without a causal relation between the violation of the statute and the loss of credit, or some other harm, a plaintiff cannot obtain an award of 'actual damages'"); *Schmidt*, 2004 WL 785098 at *4 (same). Moreover, Plaintiff "bears the burden of proving causation by a preponderance of the evidence." *Gagliardi*, 2011 WL 337331 at *12.

As AT&T did not receive notification of Plaintiff's dispute until April, 2009, any damages allegedly suffered prior to that date (*e.g.*, Plaintiff's failure to secure an NFCU loan at its preferred rates and postage paid mailing his dispute letters to the credit bureaus) are not recoverable because AT&T had not been put on notice of his dispute at that point. *See Schmit,* 2004 WL 785098 at *4 (window of potential liability arose when furnisher verified ACDV and ended when adverse report was deleted); *Burrell*, 753 F. Supp. 2d at 448-49 (dismissing plaintiff's FCRA claim and explaining that he could not assert a claim based on § 1681s-2(b) for defendant's allegedly furnishing inaccurate information prior to the date on which plaintiff first notified the credit reporting agencies of his dispute). *Cf. Philibin*, 101 F.3d at 968 n.7 (damages

48

tied to alleged inaccuracies barred by FCRA's two-year statute of limitations could constitute part of plaintiff's claim).

### (b)   *Plaintiff Has Not And Cannot Demonstrate Any Entitlement To Punitive Damages.*

Pursuant to 15 U.S.C. § 1681n(a)(2), "[a]ny person who willfully fails to comply with any requirement imposed under this subchapter with respect to any consumer is liable to that consumer in an amount equal to the sum of . . . such amount of punitive damages as the court may allow." The United States Supreme Court most recently addressed this willfulness standard in *Safeco Ins. Co. of America, et al. v. Burr*, 551 U.S. 47 (2007). In *Safeco,* the Court considered 15 U.S.C. § 1681a(k)(1)(B)(i), which requires that consumers be advised whenever there is "an adverse or unfavorable change in insurance coverage as a result of a credit report. *Id.* at 53. Defendants had interpreted this language as applying only to ongoing customers, rather than new customers, assuming that it would be impossible to "increase" the rates or charges on those who had never before been charged. *See id.* at 61, 68.  As a result, the *Safeco* defendants did not provide FCRA notice to new customers who were given substandard terms because of their credit reports. *Id.* at 54-55. The Supreme Court disagreed with defendants' interpretation of section 1681a(k)(1)(B)(i) and, after a lengthy analysis of FCRA's history and purpose, found that FCRA did require that notice be given in certain instances. *Id.* at 64-66, 68.

However, because the statutory language was " less-than-pellucid" on this point, and in light of "a dearth of guidance" on interpreting that language, the Supreme Court found that Defendants had not acted willfully in interpreting section 1681a(k)(1)(B)(i) incorrectly. *Id.* at 68-69. In making this determination, the Court made several important points. With respect to the "willful" standard for liability under section 1681n, the Supreme Court found that willfulness

for FCRA purposes can be founded on either a "knowing" or "reckless" basis. *Id.* at 56-60.[37]   It then established a two-stage process for determining whether or not a party's interpretation was reckless: first, the reading of the statute must have been "objectively unreasonable;" and second, in making that unreasonable determination the party must have run "a risk of violating the law substantially greater than the risk associated with a reading that was merely careless." *Id.* at 69.

There is certainly *no* evidence in the present case that would demonstrate that AT&T knowingly violated the FCRA.   Nor is there any evidence that AT&T acted recklessly. Accordingly, Plaintiff is not entitled to punitive damages as a matter of law. *See, e.g., Murray v. GMAC Mortgage Corp.*, No. 05-1229, 2007 WL 2317194 (N.D. Ill. July 23, 2007) (granting reconsideration and awarding summary judgment with respect to willfulness standard under the FCRA in light of Supreme Court's decision in *Safeco*).

### (c)    Plaintiff Has Not And Cannot Demonstrate Any Entitlement To Damages For Embarrassment And Humiliation.

The courts have articulated a strict standard for a finding of emotional damage under the FCRA because the claims "are so easy to manufacture." *Sarver v. Experian Information Solutions*, 390 F.3d 969, 971 (7th Cir. 2004).   When "the injured party's own testimony is the only proof of emotional damages, he must explain the circumstances of his injury in reasonable detail; he cannot rely on mere conclusory statements." *Id.* (internal quotation omitted). *See also Wantz v. Experian Information Solutions*, 386 F.3d 829 (7th Cir. 2004) (rejecting claim of emotional distress based on nothing more than testimony that plaintiff was humiliated and embarrassed when he was rejected for credit and it was distressful to deal with credit reporting

---

[37]      The Court recognized that "the term recklessness is not self-defining," but explained that "the common law has generally understood it in the sphere of civil liability as conduct violating an objective standard: an action entailing 'an unjustifiably high risk of harm that is either known or so obvious that it should be known.'" *Safeco*, 551 U.S. at 68 (quoting *Farmer v. Brennan*, 511 U.S. 825, 836 (1994)).

agencies); *Cousin v. Trans Union Corp.*, 246 F.3d 359, 371 (5th Cir. 2001), *cert. denied*, 534 U.S. 951 (2001) (same); *Schmidt*, 2004 WL 785098 at \*4 ("generalized claims of emotional injury are not enough to establish damages). As explained by one court, in order for a plaintiff to recover for such an intangible loss, "a degree of specificity which may include corroborating testimony or medical or psychological evidence in support of the damage award" is required. *Cousin*, 246 F.3d at 371. *See also Myers v. Bennett Law Offices*, 238 F. Supp. 2d 1196, 1206 (D. Nev. 2002) (citing *Cousin* and holding that plaintiffs' affidavits were insufficient as a matter of law to support an award of damages based on emotional distress under the FCRA).

Aside from generalized statements concerning alleged embarrassment and humiliation, *see* Van Veen Dep. 145:15-147:16, Plaintiff has not offered any evidence which would support the award of such damages. In fact, Plaintiff himself testified that nobody in his community knew about the AT&T tradeline on his credit report, nor did anyone hold him in lesser regard as a result thereof. *See* Van Veen Dep. 156:3-8. Accordingly, summary judgment should be granted with respect to these damages issues.

## V.   ALTERNATIVELY, PLAINTIFF'S CLAIMS SHOULD BE REFERRED TO THE FEDERAL COMMUNICATIONS COMMISSION ON PRIMARY JURISDICTION GROUNDS

Plaintiff's Pretrial Memorandum suggests that he intends to argue: 1) that AT&T "charg[ed] him exorbitant rates for long distance calls that he placed in the months of April and May[, 2007];" and 2) that AT&T "false[ly] billed" him and "hundreds if not thousands of IDT customers in mid-2007 in connection with a planned shutdown of a portion of AT&T's network that IDT used for its customers to place long distance calls." Docket Entry 89 at pp. 2, 5. Plaintiff also suggests that AT&T's investigation was unreasonable because the charges were allegedly the result of so-called "slamming." *See* Docket Entry 92 at 2-3. To the extent Plaintiff

continues to levy these or similar arguments, his allegations implicate the doctrine of primary jurisdiction and his claims should be referred to the FCC.

By way of further explanation, the doctrine of primary jurisdiction "requires a court to refer an issue within a case that involves expert administrative discretion to the federal administrative agency charged with exercising that discretion for initial decision."[38] *Demmick, et al. v. Cellco Partnership, et al.*, No. 06-2163, 2011 WL 1253733 at *5 (D.N.J. 2011) (quoting *Richman Bros. Records, Inc. v. U.S. Sprint Comms. Co.*, 953 F.2d 1431, 1435 n. 3 (3rd Cir. 1991).

Plaintiff's allegations that he was "falsely billed" and charged "exorbitant rates"[39] fall squarely within the FCC's primary jurisdiction. Rates charged by common carriers are regulated by the FCC pursuant to the Federal Communications Act of 1934 ("Communications Act"), 47 U.S.C. § 151, *et seq.* In claiming that he was incorrectly charged for services, or charged unreasonable rates for services, Plaintiff is effectively asserting that AT&T violated section 201(b) of the Communications Act, which makes it unlawful for common carriers to engage in any "charge, practice, classification, or regulation that is unjust or unreasonable." 47 U.S.C. § 201(b). Plaintiff may not pursue in this Court any claim under § 201(b) without an FCC

---

[38] Although there is no fixed formula for determining whether an agency has primary jurisdiction, district courts often apply the following four factors to focus their analysis:

> (1) Whether the question at issue is within the conventional experience of judges or whether it involves technical or policy considerations within the agency's particular field of expertise; (2) Whether the question at issue is particularly within the agency's discretion; (3) Whether there exists a substantial danger of inconsistent rulings; and (4) Whether a prior application to the agency has been made.

*Global Naps, Inc. v. Bell Atlantic-New Jersey, Inc.*, 287 F. Supp. 2d 532, 548 (D.N.J. 2003). "Issues involving abstract statutory terms such as 'reasonable' or 'public interest' are particularly well suited for transfer to an administrative agency under the primary jurisdiction doctrine." *Alves v. Verizon, et al.*, No. 08-3196, 2010 WL 2989988 at *4 (D.N.J. July 27, 2010) (internal quotation marks and citation omitted).

[39] *See* Docket Entry 89 at p. 5.

determination that AT&T's practices were unreasonable and "[c]ourts have found that 'claims based on section 201(b) of the Communications Act are within the primary jurisdiction of the FCC." *Alves*, 2010 WL 2989988 at *10 (citing various cases). *See also In re Long Distance Telecommunications Litigation*, 831 F.2d 627, 631 (6th Cir. 1987) ("[t]he district court was clearly correct in concluding that claims based on section 201(b) of the Communications Act are within the primary jurisdiction of the FCC. Section 201(b) speaks in terms of reasonableness and [plaintiffs claim]...the defendants engaged in unreasonable practices. This is a determination that 'Congress has placed squarely within the hands of the [FCC]'"); *Telstar Resource Group, Inc. C. MCI, Inc.*, 476 F. Supp. 2d 261, 271-72 (S.D.N.Y. 2007) (same). *Accord Demmick,* 2011 WL 1253733 at *6 (citing cases for the proposition that "reasonableness determinations under § 201(b) lie within the primary jurisdiction of the FCC because they involve policy considerations within the agency's discretion and particular field of expertise").

Plaintiff's allegation he was a victim of "slamming," *see* Docket Entry 92 at 2-3, likewise implicates a statute the FCC is charged with enforcing and more appropriately left within the FCC's primary jurisdiction. *See* 47 U.S.C. § 258 (prohibiting telecommunications carriers from changing a subscriber's telephone service except in accordance with prescribed FCC procedures); 47 C.F.R. 1.719(c) ("the [FCC] will resolve slamming complaints under the definitions and procedures established in...this chapter"). In this case, Plaintiff's contends that he and "hundreds if not thousands of IDT customers" were affected by the "shutdown of a portion of AT&T's network that IDT used for its customers to place long distance calls" in mid-2007. Docket Entry 89 at p. 5. With no support in the record, Plaintiff goes on to claim that AT&T "*falsely misrepresented to the FCC* in connection with Plaintiff's slamming complaint that the problem was caused by IDT." *Id.* In reality, there is absolutely no evidence of record in this

case to suggest that AT&T switched Plaintiff's provider of telecommunications service, notwithstanding that a switching error may have caused calls from his number to be routed through AT&T's network. *See* Samaroo Dep. Ex. 14; Raso Dep. Ex. 6, 7, 11-14; *In the Matter of AT&T, Inc.*, 2009 WL 2751126 at *2 (making no finding of liability or wrongdoing against AT&T vis-à-vis Plaintiff).[40] *Accord* 47 U.S.C. § 202(a) (requiring AT&T, as a common carrier, to carry calls that come across its network). Accordingly, Plaintiff's allegations related to § 258 should be disregarded in their entirety or, in the alternative, referred to the FCC under the doctrine of primary jurisdiction.

## VI.   CONCLUSION

This matter is ripe for summary judgment, as the record plainly demonstrates that Plaintiff is unable satisfy the requisite elements of an FCRA claim, and there remain no genuine issues as to any of the material facts. Because AT&T appropriately billed Plaintiff for his calls and thoroughly investigated the accuracy of its credit reporting, AT&T is entitled to summary judgment on Plaintiff's FCRA claim.

---

[40]     If Plaintiff were in any way unsatisfied with this finding, he had 45 days to file a formal complaint with the FCC; because he did not, he is "deemed to have abandoned [his] right to bring a formal complaint regarding the cause of action at issue," 47 C.F.R. 1.719(d), and cannot revive such allegations through this action.

For the foregoing reasons, AT&T respectfully requests that this Court enter judgment in its favor as to all claims asserted in Plaintiff's Second Amended Complaint.

Respectfully submitted,

Dated: July 8, 2011

/s/  Cecilia Isaacs-Blundin
Martin C. Bryce, Jr.
Cecilia Isaacs-Blundin
**Ballard Spahr LLP**
1735 Market Street, 51st Floor
Philadelphia, Pennsylvania  19103-7599
Telephone:  (215) 864-8468
Facsimile:  (215) 864-9207
Email:  bryce@ballardspahr.com
        isaacsblundinc@ballardspahr.com

*Attorneys for Defendants AT&T Corp*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on this day, a true and correct copy of the foregoing

Motion for Summary Judgment, Memorandum of Law in Support, and Proposed Order were

served on the following via electronic service through the Electronic Case Filing System for the

Eastern District of Pennsylvania, and via hand delivery:

| |
|---|
| James A. Francis, Esquire |
| Mark D. Mailman, Esquire |
| John Soumilas, Esquire |
| Gregory J. Gorski, Esquire |
| Francis & Mailman, P.C. |
| Land Title Building, 19th Floor |
| 100 South Broad Street |
| Philadelphia, PA 19110 |
| *Counsel for Plaintiff* |

Dated: July 8, 2011

/s/ Cecilia Isaacs-Blundin
Cecilia Isaacs-Blundin