**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| DENNIS VAN VEEN, | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | Civ. No. 10-01635 |
| | : | |
| EQUIFAX INFORMATION et al, | : | |
| Defendant. | : | |
| | : | |

## O R D E R

On January 28, 2011, Plaintiff filed a Second Amended Complaint against AT&T Corp. and AT&T Credit Management for violations of the Fair Credit Reporting Act. *(Doc. No. 46.)* I dismissed AT&T Credit Management from this action, leaving AT&T Corp. as the sole Defendant. *(Doc. No. 95.)*  Plaintiff alleges that AT&T reported false information to credit reporting agencies, and that the information was not removed from his credit report after Plaintiff disputed its accuracy.  *(Doc. No. 46.)*

AT&T has moved for summary judgment on the following grounds: 1) Defendant did not report inaccurate or incomplete information to the CRAs; 2) even if it reported inaccurate information, Defendant conducted a reasonable investigation when informed of Plaintiff's dispute; 3) Plaintiff cannot prove he was damaged; and 4) Plaintiff's claims should be referred to the Federal Communications Commission.  Plaintiff filed a Response, and Defendant filed a Reply. *(Doc. Nos. 113, 119.)* For the reasons that follow, I will grant Defendant's Motion in part and deny it in part.

### I.      Factual Background

The facts are largely uncontested.  In late May or early June 2007, Plaintiff received a bill

for $181.04 from Defendant for long distance telephone calls allegedly made from Plaintiff's

home. *(Doc. 110-2 at 13.)*  Plaintiff did not pay this bill. In late-June 2007, Plaintiff received a

second bill from Defendant for $202.18—the prior bills plus charges for additional calls.  *(Id. at*

*14.)* Defendant subsequently re-rated the calls, and issued a credit of $139.63, leaving a $62.55

balance due.

Believing that because he never consented to Defendant's telephone services, he owed no

money, Plaintiff refused to pay the $62.55.  *(Doc. 113-2 at 27.)*  In August 2007, Defendant

forwarded Plaintiff's unpaid account to a collection agency for the amount of $64.12. *(Id.)* On

December 26, 2007, having still not received payment, Defendant wrote off Plaintiff's $64.12

balance.  *(Id.)* On this date, Defendant reported Plaintiff's account to the CRAs as "charged off,"

meaning Defendant considered the debt uncollectable.  *(Id.)* A notation of "charged off" can

negatively affect a consumer's credit score. *(Id.)* On March 12, 2009, Defendant adjusted

Plaintiff's account balance to zero and sent Plaintiff a statement notifying him that the

adjustment was "due to incorrect AT&T billing." *(Id. at 31.)* Because Defendant believed the

underlying charges were valid and accurately reported as charged-off, Defendant did not ask the

CRAs delete the tradeline related to Plaintiff's account. *(110-2 at 16.)* As a result of AT&T's

adjustment to Plaintiff's then-closed account, Defendant's internal system registered the account

as reinstated and issued a bill for $10.32 (representing a monthly recurring charge plus

applicable taxes and fees).  *(Id. at 16.)*  Defendant adjusted the $10.32 balance to $0 before the

August, 30, 2009 payment date. Defendant later requested deletion of Plaintiff's account and, by

May 19, 2010, no mention of AT&T appeared on Plaintiff's credit report.  *(Id.)*

Between 2007 and 2009, Plaintiff vigorously disputed his account balance through

numerous channels.  The AT&T Executive Appeals Department found that Plaintiff was not

billed in error and affirmed the charges. *(Id. at 15.)* Plaintiff also filed a complaint with the FCC

for wrongful billing.  Relying on Defendant's adjustment of Plaintiff's account balance, the FCC

declined to consider the merits of Plaintiff's complaint.  The FCC found "that AT&T has fully

absolved the Complainant of all charges assessed by AT&T in a manner consistent with the

Commission's liability rules."  *(Doc. No. 113-2 at 31.)*

Plaintiff disputed the negative credit reporting with the CRAs.  When a consumer

contacts a CRA about a dispute regarding credit reporting, the agency transmits the disputed

information to the furnisher of credit information via an Automated Consumer Dispute

Verification through the e-OSCAR system.  Between April and May 2009, Defendant received

three ACDVs regarding Plaintiff's account, which I describe in greater detail below.

## II.     Legal Standard

Under Rule 56(a), I must grant summary judgment if the moving Party "shows that there

is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of

law." Fed. R. Civ. P. 56(a).

"If the moving party meets the initial burden of showing that there is no genuine issue of

material fact, the burden shifts to the non-moving party to set forth specific facts showing the

existence of such an issue for trial." Shields v. Zuccarini, 254 F.3d 476, 481 (3d Cir. 2001). "To

raise a genuine issue of material fact, however, the opponent need not match, item for item, each

piece of evidence proffered by the movant. In practical terms, if the opponent has exceeded the

'mere scintilla' threshold and has offered a genuine issue of material fact, then the court cannot

credit the movant's version of events against the opponent, even if the quantity of the movant's

evidence far outweighs that of its opponent." Big Apple BMW, Inc. v. BMW of N. Am., Inc.,

974 F.2d 1358, 1363 (3d Cir. 1992).

Summary judgment must be entered against "a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986).

### III.    FCRA Claim

Plaintiff argues at length that AT&T reported inaccurate information to the CRAs because he never opened an account with AT&T.  *(Doc. No. 113-2 at 11-18)* Whether true or not, these allegations are not germane.  FCRA Section 1681s-2(a) requires furnishers of credit information, like Defendant, to provide accurate information to CRAs in the first instance.  A private consumer like Plaintiff, however, may not bring a cause of action for an alleged violation of 1681s-2(a).  15 U.S.C. § 1681-2(d); Chiang v. Verizon New England, Inc., 595 F. 3d 26, 35 (1st Cir. 2010).  Plaintiff undoubtedly is aware of this limitation, as demonstrated by the fact that he filed his claim under 1681s-2(b), which does permit private causes of action.

Under Section 1681s-2(b), once a CRA (like Equifax, Experian or Trans Union) notifies a credit furnisher (like Defendant) of a dispute, the furnisher must: 1) conduct an investigation with respect to the disputed information; 2) review all relevant information received from the CRA; 3) report the results of the investigation to the CRA; and 4) if the information is found to be inaccurate or incomplete, report the results to all CRAs to which it originally provided the erroneous information.  15 U.S.C. § 1681s-2(b).

Defendant AT&T moves for summary judgment arguing that 1) Defendant conducted a reasonable investigation into the disputes; and 2) even if its investigations were unreasonable, it

corrected any inaccuracies on Plaintiff's reports.

### A. **Reasonableness of the Investigation**

Furnishers of credit information, like Defendant, are required to investigate disputes conveyed to them by CRAs. The duty to investigate is triggered only after the furnisher receives a notice from a CRA regarding the disputed account.  15 U.S.C. 1681s-2(b).  Although the FCRA does not define the term "investigation," both Parties agree that the investigation must be "reasonable." *(Doc. Nos. 110-2 at 42, 113-2 at 57-58.);* see  Chiang v. Verizon New England, Inc., 595 F.3d 26, 36-37 (1st Cir. 2010); Johnson v. MBNA Am. Bank, NA, 357 F.3d 426, 430-31 (4th Cir.2004).

I must assess the reasonableness of AT&T's investigation in light of what it learned about the dispute from the CRA. Chiang, 595 F.3d at 38 (the furnisher's investigation should be judged "in light of what it learned about the nature of the dispute from the description in the CRA's notice of dispute.").  A furnisher may investigate reasonably even if it did not uncover inaccurate information, especially if the notice provided scant information.  Id.  A fact-finder should consider "the cost of verifying the accuracy of the information versus the possible harm of reporting inaccurate information."  Johnson, 357 F.3d at 426.

Because the evaluation of reasonable procedures involves weighing competing interests, summary judgment is not appropriate unless "the reasonableness of the defendant's procedures is beyond question."  Westra v. Credit Control of Pinellas, 409 F.3d 825, 827 (7th Cir. 2005). In the related context of CRAs' investigative procedures, the Third Circuit held that "the reasonableness of a credit reporting agency's procedures is normally a question for trial unless the reasonableness or unreasonableness of the procedures is beyond question." Cortez v. Trans Union, LLC, 617 F.3d 688, 709 (3d Cir. 2010) (internal quotations omitted).

### B. Accuracy of Information

Once a furnisher investigates a dispute, it must: 1) report the result of the investigation to the CRA; 2) report those results to all other CRAs to which the furnisher provided the information if the investigation discloses that the information is incomplete or inaccurate; and 3) promptly modify, delete, or block the reporting of that item of disputed information found to be inaccurate, incomplete, or unverifiable.  15 U.S.C. § 1681s-2(b).

Significantly, "a plaintiff's required showing is *factual* inaccuracy rather than the existence of disputed legal questions," such as whether a plaintiff was legally billed for the services he disputes. Chiang, 595 F.3d at 38.  "[F]urnishers are neither qualified nor obligated to resolve matters that turn on questions that can only be resolved by a court of law."  Id.

A Section 1681s-2(b) claim thus "requires [P]laintiff to show actual inaccuracies that a furnisher's objectively reasonable investigation would have been able to discover." Id. at 29-30. A furnisher is not required to uncover and correct *all* inaccuracies on the consumer's credit report.  Rather, a furnisher is required to correct only those inaccuracies it discovers during its reasonable investigation.  Accordingly, a furnisher cannot be held liable for failing to correct those inaccuracies its reasonable investigation fails to uncover.

A majority of Circuits has held that information in a credit report that is technically accurate but is misleading may be deemed inaccurate under the FCRA.  Koropoulos v. Credit Bureau, Inc., 734 F.2d 37, 40 (D.C. Cir. 1984); see also Gorman v. Wolpoff & Abramson, LLP, 584 F.3d 1147 (9th Cir. 2009); Saunders v. Branch Banking & Trust Co., 526 F.3d 142 (4th Cir. 2008); Sepulvado v. CSC Credit Servs., Inc., 158 F.3d 890 (5th Cir. 1998). But see  Dickens v. Trans Union Corp., 18 F. App'x 315, 318 (6th Cir. 2001) (a report which is technically accurate is sufficient).  In an unpublished opinion, a Third Circuit panel adopted the majority position.

Schweitzer v. Equifax Information Solutions, LLC, No. 10-4137, 2011 WL 3488999  (3d Cir.

Aug. 10, 2011) at *4 ("[A] consumer report that contains technically accurate information may

be deemed inaccurate if the statement is presented in such a way that it creates a misleading

impression.")  Accordingly, I will apply the majority standard: even if technically accurate, a

consumer credit report is inaccurate under the FCRA if presented so that it creates a misleading

impression.

### C.  Reporting "Disputed" Accounts

Plaintiff argues that reporting the AT&T charge-off without noting that the account was

disputed was an "incomplete or inaccurate" entry on the credit file that Defendant failed to

correct.  Defendant responds that a furnisher has no duty to report an account as disputed

regardless of how meritorious a dispute may be.  Defendant is incorrect.

In Saunders v. Branch Banking and Trust Co. of Va., 526 F.3d 142 (4th Cir. 2008) the

Fourth Circuit rejected the precise argument AT&T makes here, ruling that "the jury could

reasonably conclude that [the furnisher's] decision to report the debt without *any* mention of a

dispute was misleading in such a way and to such an extent that it can be expected to have an

adverse effect."  Id. at 150 (internal quotations omitted).

The Ninth Circuit, adopting the Fourth Circuit's reasoning, has also held that a furnisher

may be held liable for failing to report a debt as disputed when responding to a notice of dispute.

Gorman v. Wolpoff & Abramson, LLP, 584 F.3d 1147, 1163 (9th Cir. 2009).  Holding otherwise

not only might "intimidate consumers into giving up bona fide disputes by paying debts not

actually due to avoid damage to their credit ratings, but it also contravenes the purpose of the

FCRA, to protect against unfair credit reporting methods."  Id.  The Ninth Circuit emphasized

that a furnisher does not report "incomplete or inaccurate" information "simply by failing to

report a meritless dispute, because reporting an actual debt without noting that it is disputed is unlikely to be materially misleading. It is the failure to report a bona fide dispute, a dispute that could materially alter how the reported debt is understood, that gives rise to a furnisher's liability." Id.

The reasoning of the Fourth and Ninth Circuits is persuasive.  Their decisions align with the majority view that find misleading, though technically accurate, credit reports to be inaccurate under the FCRA.  Accordingly, I agree with Plaintiff that a furnisher may be held liable for failing to report a debt as disputed if the Plaintiff has lodged a bona fide dispute.

### D.  Analysis

Despite Plaintiff's numerous calls and letters to Defendant disputing his credit report, only after it received a notice of dispute from a CRA did AT&T have an obligation to investigate. Moreover, as noted above, the notice provided to the furnisher determines the baseline against which Defendant's investigations are to be measured.

#### a.  Experian ACDV

On April 1, 2009, Experian transmitted the first ACDV to Defendant, which conveyed the following information: "112 – Claims inaccurate information.  Did not provide specific dispute.  Provide complete ID and verify account information." *(Doc. 110 Ex. 2.)*  The ACDV also included the following statement made by Plaintiff: "ATANDT PROVIDED A STATEMENT TO ME THAT SAID I OWED NOTHING TO THEM." *(Id.)*  To investigate the dispute conveyed by Experian, Defendant's ACDV analyst first accessed the e-OSCAR system to ascertain what Experian's records showed that Defendant had reported regarding Plaintiff's account.  At this time, Experian's records showed that Plaintiff's account had a balance of $64

which was due on January 16, 2008, and that the account had been "charged off." *(Experian Dep. 24:2-22, 26:6-9.)* The ACDV analyst then accessed AT&T's databases to examine Plaintiff's account information, including balance dates and amounts, payment history, account status, and any notes about the account. *(Id.)*

Defendant is not entitled to summary judgment on the issue of whether it conducted a reasonable investigation into the Experian ACDV and corrected inaccuracies. By Defendant's own admission, on March 12, 2009, Defendant issued a courtesy adjustment of Plaintiff's account in the amount of $64.12, leaving a balance of zero. Defendant also provided Plaintiff with a letter informing him of the adjustment "due to incorrect billing." This gave Plaintiff the reasonable impression that he had been absolved of the debt.

Pursuant to AT&T's standard procedures, when investigating the Experian ACDV, the analyst only verified Plaintiff's existing account information. The analyst did not investigate whether a statement regarding the adjustment had been provided to Plaintiff, why it was provided, and if the adjustment should be reflected in Plaintiff's credit report. A jury could conclude that these steps might have informed the analyst that Plaintiff disputed his account and led the analyst to update the Experian tradeline accordingly.

### b.  Trans Union ACDV

On April 24, 2009, Trans Union transmitted an ACDV related to Plaintiff's account with Defendant. *(Trans Union Dep. Ex. 1.)* With respect to Plaintiff's dispute, the Trans Union ACDV provided "Disp Curr Bal-Verify Orig Loan Amt, Schld Monthly Pymt Amt, Actl Pymt Amt, Amt Past Due, Curr Bal, and Orig Chargeoff Amt Claims company will change. Verify all account information" and "Unable to authenticate documentation dated 03/16/2009." *(Trans Union Dep. 37:6-38:6 and Ex. 1.)* Unlike the Experian ACDV, the Trans Union ACDV asked

Defendant merely to verify existing account information.  It is against this vague ACDV that Defendant's investigation is measured, and Defendant's investigation plainly was reasonable given the scant information it received.

The ACDV analyst accessed the e-OSCAR system to ascertain what Trans Union's records showed that Defendant had reported with respect to Plaintiff's account.  Trans Union's records showed that Plaintiff had a balance owing of $64, which was past due.  In the comments and status column, the account was listed as a "profit and loss writeoff", which meant that AT&T had stopped seeking collection on the amount.  *(Id. at 15:4-11, 22:13-23, 42:14-43:11 and Ex. 1.)*  The analyst then accessed Defendant's databases to examine Plaintiff's account.  Based on the information reviewed, the analyst confirmed that Defendant had not agreed to delete the entry regarding Plaintiff's account.  In responding to the Trans Union ACDV, the analyst requested that Trans Union adjust Plaintiff's past due and balance amounts from $64 to $0, as well as update other incidental information such as Plaintiff's telephone number.

Based on the information provided to Defendant by the Trans Union ACDV, Defendant conducted a reasonable investigation.  The ACDV informed Defendant that Plaintiff disputed the balance and the amount past due.  The analyst investigated these amounts and adjusted them to $0.  The analyst also adjusted the charge off date from January 2008 to December 2007.

The ACDV said nothing about the profit and loss writeoff status, and it was thus reasonable for the analyst not to investigate whether the account had been properly written off. Moreover, nothing the analyst would have investigated would have caused AT&T to alter Plaintiff's account status. As already discussed, a furnisher's duty to investigate extends to *factual* inaccuracies, not legal disputes.  Plaintiff and Defendant dispute whether Plaintiff was legally billed; there is no dispute that Plaintiff was in fact billed, did not pay the bill, and that

Defendant wrote off his account.

Plaintiff presents no evidence to show why Defendant's investigation was unreasonable in light of the information Trans Union transmitted. Rather, Plaintiff argues only that AT&T never conducts a meaningful investigation. Plaintiff also provides a laundry list of investigative techniques AT&T never employs, including checking billing and call records, reviewing consumer dispute history, and contacting customers. *(Doc. 113-2 at 50-52.)* Plaintiff ignores that I may not judge Defendant's actions abstractly, but in light of Trans Union's notice of dispute. Chiang, 595 F.3d at 38; Westra, 409 F.3d at 827 (finding Defendant's investigation reasonable based on "scant" information provided to it by the CRA). Even if Plaintiff is correct and Defendant never employs a host of investigative techniques, its investigation here remains reasonable in light of the scant information it received from Trans Union.

### c. Equifax ACDV

On about August 17, 2009, Equifax transmitted an ACDV related to Plaintiff's AT&T account, which provided: "[020] CLAIMS TRUE IDENTIFY FRAUD – ACCOUNT FRAUDULENTLY OPENED INITIATE INVESTIGATION." *(Equifax Dep. 30:10-14 and Ex. 1.)* As with the other ACDVs, the AT&T analyst accessed the e-OSCAR system to ascertain what Equifax's records showed that Defendant had reported with respect to Plaintiff's account. Equifax's records showed that Plaintiff's account had a current balance of zero and zero past due. The records did not list any amount as having been charged off. In the account status section, however, the records provided "Unpaid balance reported as a loss by credit grantor (charge-off)." *(Raso Dep. 201:4-12; Equifax Dep. 16:8-16 and Ex. 1.)*

The ACDV analyst accessed Defendant's databases to examine Plaintiff's account information. Based on this information, the ACDV analyst was able to determine that the

disputed account belonged to Plaintiff and was not a result of fraud or identity theft.  *(Raso Dep. 75:11-76:4, Exs. 6, 7, 11-13, 15-19.)*  As of August 17, 2009, Plaintiff's account was showing a $10.32 balance.  As I have explained, this was the result of Defendant zeroing out Plaintiff's then-closed account.

The ACDV analyst responded to Equifax's ACDV by requesting that Equifax modify the information it had on file regarding the current balance (from $0 to $10), charge-off date and amount (to $64 in December 2007), and date closed (to August 2007).  *(Equifax Dep. 11:24-12:10, 15:9-10, 16:17-22, 18:23-20:22, and Ex. 1.)*

Based on the information provided in the Equifax ACDV, Defendant conducted a reasonable investigation.  The analyst verified the account information and concluded that the account was not opened as a result of identity theft or fraud.  Indeed, Plaintiff has never presented any evidence that his identity was stolen.  Defendant clearly believes that it properly billed Plaintiff and nothing the analyst would have found by investigating further would have indicated identity fraud.

To the extent Plaintiff argues that AT&T committed identity fraud by opening this account, that is neither a factual inaccuracy nor a bona fide dispute.  Plaintiff thus cannot establish any causal relationship between the allegedly unreasonable investigation and any failure to discover inaccuracies in his account.  Chiang, 595 F.3d at 37.  Accordingly, Defendant conducted a reasonable investigation when notified of a dispute by Equifax and corrected any inaccuracies it found during its investigation.

### IV.    Damages

A party may recover actual damages for negligent violations of the FCRA.  15 U.S.C. § 1681*o*.  Defendant argues that even if it violated the FCRA by failing properly to investigate

Plaintiff's disputes, Plaintiff cannot show he was damaged.  Plaintiff argues that as a result of "AT&T's failures in responding to Plaintiff's credit reporting disputes, Plaintiff has suffered harm in the form of lost credit opportunities, harm to credit reputation and emotional distress." *(Doc. No. 113-2 at 48.)*

### A.   Lost Credit Opportunities

As I already explained, Plaintiff does not have a cause of action for Defendant's alleged inaccurate reporting.  Rather, Plaintiff can recover only for Defendant's alleged failure to conduct a reasonable investigation of his dispute after receiving notice from a CRA.  15 U.S.C. § 1681s-2(b).  Accordingly, Plaintiff can recover only for those damages caused by Defendant's unreasonable investigations.

The only instance of lost credit opportunity Plaintiff alleges relates to a fixed equity loan he obtained in 2008.  Plaintiff learned in December 2008 that he would receive a higher interest rate (7.75% vs. 7.25%) on a $30,000 fixed equity loan because of the derogatory AT&T account appearing on his credit report. *(Doc. No. 113-2 at 24.)*  Defendant did not receive notification of Plaintiff's dispute until April 2009.  Accordingly, Plaintiff may not recover damages for the failure to secure a loan at a preferred rate five months earlier.  Moreover, Plaintiff does not argue, and has submitted no evidence to show, that had Defendant conducted a more thorough investigation in April 2009 and corrected any alleged inaccuracies, he would have paid a lower interest rate on the loan from that point forward.  Accordingly, I will grant summary judgment on the issue of Plaintiff's lost credit opportunities.

### B.  Harm to Credit Reputation

Plaintiff alleges that he suffered "credit defamation" when Defendant "reported false and

derogatory information about Plaintiff to the credit reporting agencies which subsequently published the information." *(Doc. No. 113-2 at 63.)* Plaintiff specifically notes that the credit reports from Experian, Equifax, and Trans Union listed his account as "charged off"—among the most negative items that can be included in a report. *(Id.)*

Damages for loss of reputation due to false credit reports are recoverable under the FCRA. Dalton v. Capital Associated Industries, Inc. 257 F.3d 409, 418-19 (4th Cir. 2001) (citing cases). Plaintiff has nevertheless failed to present any evidence showing how his reputation was affected apart from the very fact of the alleged inaccurate reports themselves. Rather, Plaintiff argues that "recovery for credit defamation . . . may be predicated merely upon a showing that false and derogatory information about Plaintiff appeared on a credit report furnished to a third party." *(Doc. 113-2 at 63.)*

Plaintiff has presented no evidence that his credit reports were furnished to any third party during the relevant time period. The only third party to whom Plaintiff furnished his allegedly derogatory credit reports was the credit union from which he obtained an equity loan in December 2008. As I already explained, Plaintiff cannot recover for damages related to this loan, and thus cannot show that he suffered any loss of credit reputation as a result of Defendant's allegedly inadequate investigations. Accordingly, I will grant summary judgment on the issue of harm to Plaintiff's credit reputation.

### C. Emotional Harm

Plaintiff seeks damages for the anxiety and humiliation he suffered as a result of Defendant's alleged FCRA violations. Defendant argues that Plaintiff has not presented sufficient evidence of his damages to survive summary judgment.

The FCRA permits recovery for emotional harm stemming from erroneous credit

reporting.  See Cortez v. Trans Union, LLC, 617 F.3d 688, 719 (3d Cir. 2010) ("[D]amages for

violations of the FCRA allow recovery for humiliation and embarrassment or mental distress

even if the plaintiff has suffered no out-of-pocket losses").  In Cortez, the Third Circuit explicitly

rejected the argument that a plaintiff must introduce corroborating testimony to show emotional

harm.  Id. at 620.

Plaintiff testified at his deposition that he suffered severe anxiety and stress as a result of

his dealings with Defendant.  He described his experience with Defendant as a "personal

assault," which "was very upsetting in some ways." *(Van Veen Dep. at 75:17-76:1.)* Plaintiff

also testified that he had trouble concentrating at work. *(Id. at 145:15-147:16.)*  That this

testimony is uncorroborated and lacks specificity goes to credibility and weight.  Cortez, 617

F.3d at 620 ("If a jury accepts testimony of a plaintiff that establishes an injury without

corroboration, the plaintiff should be allowed to recover under the FCRA.")  Accordingly, I will

deny summary judgment on the question of Plaintiff's emotional harm.

### D.  Punitive Damages

A plaintiff may recover actual and punitive damages for willful violations of the FCRA.

15 U.S.C. § 1681n(a)(2).  "Willful" violations of the FCRA can be based on either a "knowing"

or "reckless" basis.  Safeco Ins. Co. of America v. Burr, 551 U.S. 47, 56-60 (2007); Cushman v.

Trans Union Corp., 115 F.3d 220, 226 (3d Cir. 1997).  A company subject to FCRA acts with

reckless disregard if (1) the action is a violation under a reasonable reading of the statute's terms;

and (2) "the company ran a risk of violating the law substantially greater than the risk associated

with a reading that was merely careless."  Safeco, 551 U.S. at 69.

Plaintiff has submitted more than a "mere scintilla" of evidence to support a finding that

Defendant acted recklessly when investigating the Experian credit dispute.  In Saunders, the

Fourth Circuit upheld a punitive damages award based on evidence that a furnisher intended not to report Plaintiff's dispute of his account, despite the furnisher's records reflecting the ongoing dispute. 526 F.3d at 151.

As I already discussed, the Experian notice of dispute included a message from Plaintiff that Defendant told him he owed nothing on the account. Plaintiff has introduced evidence that Defendant's investigative procedures never permit deletion of accounts, always result in verifying the disputed account as "charged-off," and never result in marking an account as disputed. *(Page Dep. at 37:9-38:1; 46:18-47:25.)* Moreover, if ACDV analysts took more time than the 5 to 10 minutes allotted for investigations, they might have located records evidencing Plaintiff's dispute and marked his account accordingly. *(Id. at 20:16-19; 51:23-52:22.)* A jury could thus find that by so limiting the procedures ACDV analysts were to follow, AT&T recklessly disregarded Plaintiff's FCRA rights. Accordingly, I will deny Defendant's motion for summary judgment on this issue.

## V.     Primary Jurisdiction

Finally, Defendant argues that I should refer Plaintiff's claims to the FCC on primary jurisdiction grounds because Plaintiff alleges he was falsely billed and charged exorbitant rates. I do not agree.

"Primary jurisdiction is a doctrine that requires a court to transfer an issue within a case that involves expert administrative discretion to the federal administrative agency charged with exercising that discretion for initial decision." Richman Bros. Records, Inc. v. U.S. Sprint Comms. Co., 953 F.2d 1431, 1435 n.3 (3d Cir. 1991). The doctrine has been applied "when the issue involves technical questions of fact uniquely within the expertise and experience of an agency." Id.

As Defendant correctly argues, the issue presented here is whether Defendant conducted a reasonable investigation when it was notified of Plaintiff's dispute, not whether he was falsely billed in the first instance.  Plaintiff brought this suit under the FCRA, not the Federal Communications Act, 47 US.C. § 151, *et seq,* and Congress has created a private right of action for violations of FRCA section 1681s-2(b).   Chiang, 595 F.3d at 36; Saunders, 526 F.3d at 149; Westra, 409 F.3d at 826-27.  Accordingly, I will not refer Plaintiff's case to the FCC.

**Conclusion**

For the foregoing reasons, I will grant summary judgment in Defendant's favor with respect to (1) Plaintiff's FCRA claims pertaining to the Trans Union and Equifax credit reports; and (2) Plaintiff's claims of lost credit opportunities and harm to credit reputation.  I will deny Defendant's summary judgment motion with respect to (1) Plaintiff's FCRA claims pertaining to the Experian credit report; (2) Plaintiff's claim of emotional harm; (3) Plaintiff's claim for punitive damages; and (4) referral to the FCC.

**AND NOW**, this 14th day of February, 2012, it is hereby **ORDERED** that Defendant's Motion for Summary Judgment *(Doc. No. 110)* is **GRANTED** with respect to (1) Plaintiff's FCRA claims pertaining to the Trans Union and Equifax credit reports; and (2) Plaintiff's claims of lost credit opportunities and harm to credit reputation and **DENIED** with respect to (1) Plaintiff's FCRA claims pertaining to the Experian credit report; (2) Plaintiff's claim of emotional harm; (3) Plaintiff's claim for punitive damages; and (4) referral to the FCC.

**AND IT IS SO ORDERED.**

*/s/ Paul S. Diamond*
Paul S. Diamond, J.